## EMPLOYERS LIABILITY ASSURANCE CORPORATION AND OTHERS v. WILLIAM A. MORSE.

111 N. W. (2d) 620.

November 10, 1961—No. 38,313.

*Thomas, King, Daubney, Swenson & Collatz,* for appellants.
*Arthur G. Hallgrain,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to an order of the trial court granting judgment notwithstanding the verdict after a verdict by the jury in favor of plaintiff.

This case arises out of a fire which occurred in the Willard Hotel in St. Paul on December 13, 1955. As a result of the fire, tenants in the building sustained extensive property damage. Numerous actions were commenced against the owner of the building on the theory that the fire was negligently caused by his employee and servant. The actions were consolidated in one trial for the purpose of litigating the question of liability. The trial resulted in a determination of liability. On appeal, we affirmed. Fox v. Morse, 255 Minn. 318, 96 N. W. (2d) 637. The details of the fire and the basis for liability as there determined are fully set forth in our former opinion and need not be repeated here.

Arthur Langevin occupied the first floor and basement of the building as a tenant. In these premises he conducted a paint supply business under the name of Langevin Paint Supply Company. The fire itself was confined to the two top floors of a six-story building, but in the process of extinguishing the fire great quantities of water were dumped on the building. The water found its way through the building and caused extensive damage to the stock of merchandise and fixtures of Langevin. Plaintiffs in this action were insurers of Langevin's stock and fixtures. They made a settlement with Langevin and thereafter, as subrogees, brought this action against the owner of the building to recover the

amount they had paid. The trial resulted in a verdict for plaintiffs. Thereafter the trial court granted defendant's motion for judgment notwithstanding the verdict except as to five percent of the recovery, which it was conceded was due to soot and smoke. The trial court concluded that the owner was not liable for damages caused by water under an exculpatory clause in the lease between the owner of the building and Langevin.

The lease is a standard printed form in common use. It places responsibility on the lessee for maintaining the premises. Among other things, it provides:

"The said Lessee agrees to put and keep all skylights, fire-escapes, plumbing, toilets, sinks, pipes, drains, water-meters, steam pipes and radiators in and for said premises in good order and repair at said Lessee's own cost and expense during said term."

Thereafter the lease includes the following paragraph excluding liability on the part of the lessor for certain damages:

"The said Lessee agrees that the said Lessor shall not be holden or liable for any loss or damage which may be sustained by the said Lessee or others by the reason of the freezing, bursting, overflowing or defect of any water, sewer, gas or steam pipes, closets or sinks, in or about said premises or from premises overhead, *nor for any loss or damage which directly or indirectly may be sustained by water, sewer or gas,* nor for loss or damage caused by water, ice or snow from roof, skylights, trap doors or otherwise, nor for loss or damage by the reason of the present or future condition of repair of said premises or for loss or damage arising from acts or omissions of said Lessee or others as tenants or occupiers." (Italics supplied.)

The trial court proceeded to divide this exculpatory paragraph into three separate and unrelated provisions. In its memorandum the court said:

"* * * With respect to exclusion from liability involving damage by water, the paragraph in that respect appears to be divided into the following three parts:

"1. Damage sustained by *bursting, overflowing,* or *defects* of

"A. pipes—water, sewer, gas or steam, and

"B. closets or sinks—sewer, gas, water, or steam in and about premises or from premises overhead.

"2. Damage sustained directly or indirectly from

"A. water

"B. sewer

"C. gas .

"3. Damage caused by water, ice or snow from

"A. roof

"B. skylights

"C. trapdoors

"D. otherwise"

Having divided the lease into these three separate and unrelated provisions, the trial court proceeded to hold that the lease was free from ambiguity and that, by the second subdivision of the court's dissection of the paragraph, there was no liability for damage caused by water, no matter how it came on the premises; that the damage here was 95 percent caused by water; hence that there could be no recovery for such damages.

The only questions for determination on this appeal are: (1) Did the trial court correctly hold that the lessor, by the terms of his lease, was exempt from liability for damages caused by water poured on the building in extinguishing a fire? (2) If plaintiffs are entitled to recover, are they entitled to interest on the damages suffered from the date of their loss?

■ It is elementary that a subrogee is entitled to no greater rights than the one to whom he is subrogated. He merely steps into the shoes of his subrogor. It follows that, if liability to Langevin was excluded by the lease, plaintiffs have no greater rights to recover than he had.[1]

■ Whether a contract is ambiguous or not and therefore open to construction presents, in the first instance, a question for legal determination by the trial court. The trial court in this case determined that the contract was not ambiguous and proceeded to give to the words used in

---

[1]Travers v. Dorr, 60 Minn. 173, 62 N. W. 269; 18 Dunnell, Dig. (3 ed.) § 9044.

the exculpatory clause their literal meaning. On appeal, it is for us to determine whether the trial court was correct in holding that there was no ambiguity and also whether the proper interpretation was given to the language used by the parties.

■ A contract is ambiguous if it is reasonably susceptible to more than one construction.[2]

■ The cardinal purpose of construing a contract is to ascertain the intention of the parties from the language used by them and by a construction of the entire instrument.[3]

In Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 442, 40 N. W. (2d) 73, 78, we pointed out:

"We have said many times that a contract should be so construed as to give effect to the intention of the parties as expressed in the language used, and that the words used are not only to be construed with reference to the subject matter of the contract and the circumstances of their use, but that they derive meaning from such factors."

In Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 216, 30 N. W. (2d) 341, 345, we said:

"* * * The intent of the contracting parties is to be ascertained, *not by a process of dissection in which words or phrases are isolated from their context,* but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole." (Italics supplied.)

■ Plaintiff relies heavily on the rule of ejusdem generis. We think that the rule is particularly applicable here. In Orme v. Atlas Gas & Oil Co. 217 Minn. 27, 39, 13 N. W. (2d) 757, 764, we said:

"* * * The *rationale* of the rule of ejusdem generis is that all words in a writing should be given effect if possible; that where specific words enumerating members of a class are followed by general words capable of including the class and others the former would be rendered meaningless if the latter were given their full and natural meaning, since the

---

[2]See, N. P. Ry. Co. v. United States (D. Minn.) 70 F. Supp. 836.
[3]See, 4 Dunnell, Dig. (3 ed.) § 1816.

latter include the former, and that the incompatibility should be reconciled by construing the general words as referring to the same kind as those enumerated by the specific words, and thus give meaning to both."

■ Applying these rules to the facts of the case now before us, we are convinced that the trial court incorrectly construed this lease. The lessor could have excluded liability for damages caused by fire.[4] He did not do so. The trial court, after dissecting the paragraph dealing with limitation of the lessor's liability, held that under the second subdivision damage sustained by water was excluded no matter from what source. We do not believe that the paragraph excluding liability in this lease can be divided into separate provisions unrelated to each other. It is obvious that what the parties intended to do was to exclude liability on the part of the lessor for damages caused by a failure of the lessee to do those things which the lease required him to do. In the clause of the lease upon which defendant relies to escape liability, water, sewer, and gas are placed in the same category. Clearly, the damage from water, as well as that from gas and sewage for which the lessor was not liable, is such as the lessee had control over.

The literal meaning of a word may be qualified by the purpose for which it is used in a sentence or paragraph.

"* * * The work of the draftsman in expressing the intent of the parties usually goes for naught when words are given a meaning in disregard of the context in which they are used." Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 155, 76 N. W. (2d) 486, 490.

Applying the rule of ejusdem generis to the exculpatory *paragraph as a whole,* the word "water" as used in the second subdivision of the court's dissection must be held to refer to those specific types of water damage that are stated with particularity. The same is true of the word "otherwise" as used in the third of the court's subdivisions.

■ Water used in extinguishing a fire is only incidental to the fire itself. The real or proximate cause of the damage is the fire. It is inconceivable that the lessor under this lease intended to exclude liability

---

[4]Commercial Union Assur. Co. Ltd. v. Foley Bros. 141 Minn. 258, 169 N. W. 793.

for damage caused by water used in extinguishing a fire but failed entirely to exclude liability resulting from the fire itself or from soot and smoke that came out of the fire.

If the contention of defendant or the construction placed upon the contract by the trial court were tenable, it would render meaningless the major portion of the exculpatory paragraph. If the words "damage which directly or indirectly may be sustained by water" are given their literal meaning without reference to the balance of the paragraph, all the remaining part of the paragraph referring to water damage becomes superfluous and it would have been unnecessary to include them. From the fact that they are included, the conclusion is inescapable that they define the type of water damage for which liability was excluded. The damage here is directly attributable to the fire. Damage caused by water poured on the fire was as much attributable to the fire as that caused by combustion or by soot and smoke. It would make as much sense to separate damages due to smoke or soot emanating from the fire as it would that which resulted from water being put on the fire in an effort to extinguish it. In contracts of fire insurance, water damage is considered to be part of the damage caused by fire.[5] While cases so holding are not directly in point in that the question here is not the same as under a fire insurance contract but rather a construction of the language used in the lease, the attempt to separate damage done by water used to extinguish a fire from the fire itself makes no sense in either situation.

Inasmuch as we construe the damages here to be due to the fire, liability follows under our decision in Fox v. Morse, 255 Minn. 318, 96 N. W. (2d) 637; consequently, the jury's verdict should stand.

■ Plaintiffs contend that they are entitled to interest on the amount of damage on the stock loss from the time the damage occurred. Much of a lengthy record is devoted to proof of the amount of damages. Part of the damage is based on a total destruction of goods and merchandise;

---

[5]John Davis & Co. v. Insurance Co. of North America, 115 Mich. 382, 73 N. W. 393; McDonald v. Royal Ins. Co. Ltd. 98 Mont. 572, 40 P. (2d) 1005; 45 C. J. S., Insurance, § 813; see, also, 26 C. J., Fire Insurance, § 432.

part on the partial destruction of other items of merchandise; and part on damage to fixtures. The salvage value of the goods partially destroyed was involved as well as the reasonable cost of repairing fixtures. The jury returned a general verdict. It was impossible for defendant to know how much he must pay until the jury had assessed the damage. Where the amount of liability has not been ascertained, there is no liability for interest thereon prior to the time of its ascertainment.[6] The right to interest here is governed by Minn. St. 549.09.

Inasmuch as there remains nothing for a jury to pass on in a new trial, the order is reversed with directions to enter judgment for plaintiffs in accordance with the verdict.[7]

Reversed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[6]Swanson v. Andrus, 83 Minn. 505, 86 N. W. 465; Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8; 10 Dunnell, Dig. (3 ed.) §§ 4879 and 4883.
[7]See, Bell Lbr. Co. v. Seaman, 136 Minn. 106, 161 N. W. 383.