REPUBLIC NATIONAL LIFE INSUR-
ANCE COMPANY, Respondent,

v.

LORRAINE REALTY CORP., et
al., Defendants,

Angeline P. Stoppel, et al., Appellants.

Nos. 48198, 48793.

Supreme Court of Minnesota.

March 30, 1979.

Rehearing Denied May 31, 1979.

Dolores C. Orey, St. Paul, for appellants.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Craig A. Beck, and Carol B. Bonebrake, Rochester, for respondents.

Heard before ROGOSHESKE, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by ground lessors from a judgment of the Olmsted County District Court, filed March 7, 1978, denying ground lessors' motion for an order entitling them to rents for their parcel after the period of redemption, granting the purchaser at the foreclosure sale the right to receive rents from the parcel for the duration of the lease, and finding that the lease in question is unambiguous. We affirm in part and modify in part.

The parties to this action became engaged in a commercial real estate project that began in 1963. Ground lessors owned the fee interest in property in downtown Rochester, Minnesota. That land was necessary to complete a commercial development being assembled by Lorraine Realty Corporation (Lorraine). The ground lessors refused to sell the premises because they wished to keep the property in their family, so Lorraine secured a ground lease from the ground lessors on August 8, 1963, and purchased four other pieces of property nearby.

Under the terms of the lease, Lorraine agreed to construct a new building on the leased premises. The ground lease also included a provision subordinating the "interest of the Lessors in the leased premises" to mortgagees of Lorraine.

Prior to the commencement of the actual construction on the project, Lorraine and ground lessors executed an amendment to the August 8, 1963, ground lease. This July 14, 1964, amendment did not, however, affect the priorities set forth in the August 8, 1963, lease.

By a mortgage deed and note dated May 12, 1964, Lorraine borrowed $1,900,000 from the First National Bank of St. Paul (First Bank), the interim construction lender (first mortgage). First Bank subsequently took three additional mortgages from Lorraine to secure notes in the original principal amounts of $125,000, $300,000, and $125,000, respectively. On October 15, 1968, Lorraine executed and delivered to Republic National Life Insurance Company, permanent lender, a mortgage deed to secure a promissory note in the original principal amount of $60,000 (second mortgage).

On January 3, 1969, First Bank executed and delivered to Republic an assignment of the May 12, 1964, mortgage; at that same time, First Bank executed and delivered a subordination agreement wherein it agreed to subordinate its three additional mortgages, in the total principal amount of $550,000, to the Republic first and second mortgages. On or about September 16, 1975, Lorraine defaulted under the terms of the Republic mortgages. On November 20, 1975, Republic commenced a foreclosure action against all persons possessing an interest in the property that provided security for its loans.

Republic subsequently moved for an order granting a default judgment in its favor and against Lorraine and the remaining defendants. The ground lessors filed a cross motion for summary judgment, resisting Republic's claim that Republic's mortgages were prior and superior to ground lessors' interests and asserting that their interests were prior and superior to Republic's, on the ground that the subordination clause was vague, indefinite, and lacked the essential elements to make it enforceable.

The trial court issued an order granting judgment in favor of Republic and against Lorraine, First Bank, and ground lessors, holding that Republic could foreclose its mortgages on the leasehold interest, but not against the fee interests of the ground lessors. The trial court further held that Republic was entitled to future rentals during the period of the lease as against the claim of ground lessors.

Republic appeals from that portion of the judgment barring it from foreclosing against ground lessors' fee interests, and ground lessors appeal from the judgment awarding future rentals to Republic.

The issues presented on this appeal are:

1. Is the subordination provision unenforceable as a matter of law because it is vague and unconscionable?

2. Should the ground lessors be allowed to introduce evidence to show that the intent behind paragraph 36 was to preserve Lorraine's leasehold estate as security for Lorraine's mortgagees by having them assume the position of lessee?

3. Does the subordination provision require Republic to step into the shoes of lessee and assume the lessee's obligations?

1. The subordination provision of the ground lease, paragraph 36, reads:

"The interest of the Lessors in the leased premises, and the interests of any mortgagee or mortgagees of the fee thereof shall be junior and subordinate to the interest of any mortgagee or mortgagees of the Lessee's interest in the leased premises and the building or buildings thereon."

Ground lessors argue that the subordination clause is unenforceable as a matter of law because it is vague and uncertain.[1]

This court has not determined the terms necessary to effectuate an enforceable subordination of one's fee or leasehold interest. The reason for specificity, at least in part, is to protect the seller's (lessor's) security in-

---

1. Ground lessors contend the subordination is vague and indefinite because the following are absent: (1) it fails to clearly specify the nature of the lessors' interest that is to be subordinated; (2) it fails to specify the maximum number of loans to which the ground lessors' interest is to be subordinated; (3) it fails to specify a maximum amount of the loan or loans to which the ground lessors' interest is to be subordinated; (4) it fails to limit the subordination to construction loans or to loans for improvements of the leased premises; (5) it fails to provide a maximum interest rate for the subordinating loan or loans; and (6) it fails to provide any terms and conditions for repayment of the subordinating loan.

terest. Otherwise he must rely on the good faith and ability of the developer to keep down the maximum amount of the loan, rate of interest, and other terms, so that the sellers (lessors) will have a reasonable chance to bid in the event of a foreclosure sale. The mortgagee and mortgagor also benefit because they have a definite framework within which to work.

Consistent with this rationale, ground lessors assert that the open-endedness of the subordination clause makes it unconscionable because it affords them no protection against additional mortgages. They contend the provision does not require or even permit ground lessors to approve the subordinating loans.

■ It is noteworthy that the attorney for the ground lessors did not reserve the right of the ground lessors to approve or reject prospective mortgages, yet such a reservation was retained concerning assignments or transfers by the lessee. Provision 19, Assignments, states:

"Lessee further covenants that Lessee will not, except by way of mortgage of the leasehold estate to secure some actual indebtedness or construction loan, assign or transfer this Lease without the written consent of the majority in interest of the Lessors * * *."

The ground lessors undoubtedly felt that the power to assign the lease should be reviewed and restricted and, accordingly, included this provision. It may be inferred that since a similar requirement was not made with respect to lessee's mortgaging its interest, ground lessors intentionally did not reserve the right to grant approval. Thus, having excluded a consent requirement from the subordination clause, the ground lessors may not now be heard to complain that its absence makes the provision unconscionable. They may not rely on their own omission or exclusion in order to have the clause declared unenforceable.

Ground lessors also argue that the subordination provision is unconscionable because it gives Lorraine 100 years to enter into any number of mortgages, without limitations as to terms, rates of interest, and so forth.

Ignoring the impact of the bankruptcy, ground lessors assume Lorraine could freely mortgage the property. At the time of the bankruptcy, over $1 million was tied up in outstanding mortgage debts. Prospective mortgagees would not be likely to approve additional mortgages because they would realize that they might not be able to recover in case of bankruptcy, especially in this situation where other mortgagees have priority. In light of the present bankruptcy, it is even more doubtful that a lender would approve an additional mortgage on the property. Consequently, ground lessors' fears may be more hypothetical than real.

Ground lessors cite several cases in which subordination clauses were found unenforceable because various essential terms were uncertain or omitted. See, *Lahaina-Maui Corp. v. Tau Tet Hew*, 362 F.2d 419 (9 Cir. 1966); *Magna Development Co. v. Reed*, 228 Cal.App.2d 230, 39 Cal.Rptr. 284 (1964); *Roven v. Miller*, 168 Cal.App.2d 391, 335 P.2d 1035 (1959). We feel that such cases are distinguishable from the instant suit, which involves an executed contract upon which the parties have already relied. The courts in the cited cases were not confronted with parties who had acted under the agreements and would have thereby suffered losses.

The parties also cite cases dealing with executed subordination provisions. Those cases similarly are not particularly enlightening because they deal with the lenders' noncompliance with loan terms of the agreements or with noncompliance with the use requirements. They do not address the question whether an executed subordination contract is valid despite the absence of provisions limiting the right of a lessee to mortgage the leased property.

■ Even though the provision in the instant case may lack specificity, we hold that nevertheless it is enforceable. Equity dictates that where a contract has been in existence for 15 years, where the subordination clause has been used and relied upon by the parties for 14 years, where large sums have been lent in good faith, the provision

should not be voided. Our holding is not intended to mean that indefinite or vague contracts will always survive on equitable grounds. A subordination agreement, like any contract, should be as complete and definite as possible and should include within its terms such specifications as the maximum amount of principal, rate of interest, and mode of payment. Under the facts of this case, however, we feel that where the ground lessors have reaped the benefits of the contract for over a decade, they are estopped from denying the validity of the subordination clause.

2. Ground lessors assert that the subordination provision is ambiguous and that extrinsic evidence should have been admitted to assist the trial court in construing the provision.

Whether there is ambiguity in a contract is a legal determination in the first instance. *Telex Corp. v. Data Products Corp.,* 271 Minn. 288, 291, 135 N.W.2d 681, 684 (1965); *Employers Liability Assurance Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). Ambiguity exists if it is susceptible to more than one construction. 261 Minn. 264, 111 N.W.2d 624. When examining instruments, courts are to ascertain and give effect to the intent of the parties if that can be done consistently with established legal principles. *Downing v. Independent School District No. 9,* 207 Minn. 292, 298, 291 N.W. 613, 616 (1940). Intent is "ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the * * * contract as a whole." *Cement, Sand & Gravel Co. v. Agricultural Insurance Co.,* 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947); see, *Employers Liability Assurance Corp. v. Morse,* 261 Minn. 259, 111 N.W.2d 620 (1961). See, also, *Marshall Produce Co. v. St. Paul Fire & Marine Insurance Co.,* 256 Minn. 404, 426, 98 N.W.2d 280, 295 (1959). Where language is found to be ambiguous, courts may resort to extrinsic evidence. *Donnay v. Boulware,* 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). Similar rules apply when construing the intention of parties to a lease. See, *Orme v. Atlas Gas & Oil Co.,* 217 Minn. 27, 30, 13 N.W.2d 757, 760 (1944).

Ground lessors insist that the clause is ambiguous because they, Republic, and the trial court construed the clause differently from each other. The interpretations are as follows. First, ground lessors contend that the intention behind paragraph 36 was to preserve Lorraine's leasehold interest as security for mortgagees by having the mortgagee of Lorraine assume lessee's position. Second, Republic argues that paragraph 36 subordinates ground lessors' fee interest. And third, the trial court concluded that paragraph 36 operates to subordinate ground lessors' leasehold interest to the mortgage of Republic. It also held that the ground lessors' fee was not extinguished by the foreclosure, but that the fee was encumbered until the expiration of the lease on August 31, 2013.

The mere fact the trial court was not persuaded by opposing counsel's arguments, especially when viewed in light of the whole contract, does not in itself indicate that the provision is ambiguous. We will analyze this issue by reviewing each of the interpretations.

A. Ground lessors assert that their intent, Republic's conduct and the ground lease taken as a whole show that the subordination provision was to preserve Lorraine's leasehold as security for any mortgagee. They insist that the default provision is evidence of their intention to have Republic assume Lorraine's obligations under the lease.

The default provision, paragraph 29(b) of the ground lease, states:

"Lessee will not permit either by voluntary or involuntary acts, by bankruptcy or otherwise any transfer by operation of law of the interest in said premises acquired through this Lease. If any such transfer occurs the majority in interest of Lessors may forthwith and without notice declare this Lease terminated and may take immediate possession of said premises."

Ground lessors maintain that absent the subordination provision they could have terminated the lease and taken possession of the premises after Lorraine's bankruptcy. With the inclusion of the provision, ground lessors assert, they are precluded from doing so because Republic is in essence to replace Lorraine and counteract the default.

Although ground lessors could have terminated the lease and taken possession of the premises had there been a bankruptcy and no mortgagees, this does not indicate that Republic was to step into the shoes of Lorraine. On the contrary, paragraph 8 of the lease is persuasive evidence that the ground lessors subordinated their rights to rents from the property. That provision states that lessors' rights to money under the lease shall be a first lien on the buildings and improvements and on lessee's interest in the property, but subordinate to the interests of Lorraine's mortgagees. Thus, rather than having Republic assume Lorraine's obligations under the lease, ground lessors have subordinated to Lorraine's mortgagees ground lessors' rights to rents that could otherwise be derived from the buildings, improvements, or other interests of Lorraine in the lease.

 Ground lessors also point to instances where Republic referred to its having a mortgage on the leasehold estate, as when it insured the leasehold in a title insurance policy. They maintain that such conduct illustrates Republic's understanding that it will act as lessee.

Such conduct is more likely to be intended to protect Republic's security interest in the leasehold rather than to show that it intended to assume lessee's obligations to the lessors. Furthermore, since the language of the subordination agreement is clear, particularly when combined with other provisions of the lease, resort may not be had to extrinsic evidence.

 B. Republic, on the other hand, argues [2] that paragraph 36 subordinates ground lessors' fee interest because there is no limitation placed on the words "[t]he interest of the Lessors." Republic has taken these words out of context for immediately following that opening clause is another that "the interests of any mortgagee or mortgagees of the *fee* thereof shall be junior and subordinate to the interest of any mortgagee or mortgagees of Lessee's interests in the leased premises and the building or buildings thereon." (Italics supplied.) In the first clause only the "interest" of the lessor is subordinated, whereas in the second clause the "fee" of the ground lessors' mortgagees is subordinated. The omission of the term "fee" in the first clause indicates that ground lessors did not intend to subordinate their fee interests.

Republic's argument that the term "interest" should be interpreted in its all-inclusive sense because that is the plain and ordinary meaning usually attributed to the term would be more persuasive if the second clause were not present. However, when "interest" is contrasted with "fee" in the present context, any possible ambiguity disappears. Ground lessors manifestly intended to retain their fee interest, and only if they themselves mortgaged the fee would the lessee's mortgagees have priority over the fee.

The cases cited by Republic deal with questions different from those in the instant case. The issues in those cases center on whether parties to the subordination agreement had complied with the clauses. In *Matthews v. Hinton*, 234 Cal.App.2d 736, 44 Cal.Rptr. 692 (1965), for example, there was a subordination clause similar to the one at issue here. However, that case is factually distinguishable because the lessors

2. Republic also claims that under Minnesota banking and insurance laws it is to have a first lien on the real estate. See, Minn.St. 48.19, subd. 1, and Minn.St.1965, § 60.40, subd. 3, repealed by L.1967, c. 395, art. 1, § 25, now Minn.St. 60A.11, subd. 5.

This argument is raised for the first time on appeal and will not be heard by this court. Issues not presented at trial cannot be raised on appeal. *AAMCO Industry, Inc. v. DeWolf*, 312 Minn. 95, 250 N.W.2d 835 (1977); *Bache & Co. v. Wahlgren*, 306 Minn. 238, 235 N.W.2d 839 (1975).

joined with lessees as trustor, thereby exposing their reversionary interest to liability. Consequently, the court there was not faced with the issue before this court.

C. Ground lessors dispute the trial court's finding that their interest in Lorraine's leasehold interest was being subordinated. In particular they argue that the court applied paragraph 8 too broadly. That paragraph reads:

"All money and other sums which shall become due to Lessors hereunder by reason of any provision of this Lease are and shall always be a valid and first lien upon the buildings and improvements on said property and upon all of the interest of the Lessee in this Lease, but subordinate to any mortgage which Lessee may execute thereon."

Ground lessors argue that the court—

" * * * presumed too much, however, in assuming that an intention to prevent the ground lessors from looking to the buildings and improvements in order to collect accrued rents owned [sic] by Lorraine was evidence of an intention to bar the ground lessors from collecting future ground rents as they fall due from a mortgagee of Lorraine in possession of the leasehold."

The language of paragraph 8 is quite clear; there is no limitation that only accrued rents owed to ground lessors are to be subordinated. On the contrary, the language is unrestricted. Ground lessors subordinated "[a]ll money and other sums which *shall become due* to Lessors * * *." (Italics supplied.) The emphasized words are not limited in time; they apply equally to any future rents that become due.

Ground lessors take out of context the trial court's conclusion that this provision "clearly shows the parties intended to subordinate the rights of the Lessors (to the rental sums) to 'any mortgage which Lessee may execute thereon.'" They claim the trial court mistakenly held that this shows that the parties intended to subordinate all of ground lessors' interests in the leasehold.

That provision was only one of the bases for the court's conclusion in its opinion of

June 17, 1977. The greatest portion of the opinion was devoted to reviewing the applicable rules of law and examining relevant provisions of the lease to determine the meaning of paragraph 36. The court then added—

"[i]f the above language is not entirely dispositive of the meaning of Paragraph 36, then Paragraph 8 is particularly helpful."

Thus, the discussion with respect to paragraph 8 was only incidental to the court's determination.

 It is clear from the ground lease and amendment that ground lessors subordinated their leasehold interest in the leased premises. The trial court therefore properly excluded extrinsic evidence offered by the ground lessors. The ruling was correct even though—

" * * * [s]ummary judgment is a 'blunt instrument' and should not be employed to determine issues which suggest that questions be answered before the rights of the parties can be fairly passed upon. It should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law." *Donnay v. Boulware,* 275 Minn. 45, 144 N.W.2d 716.

Since the evidence sought to be admitted would contradict, rather than clarify, the language of paragraph 36, it was properly excluded.

3. Ground lessors argue that the subordination provision should be interpreted to require Republic to step into the lessee's shoes and assume the lease obligations. Otherwise, ground lessors contend, they are placed in an anomalous situation of being fee owners deprived of rents and lease covenants to which they are entitled in order to protect their fee. They cite examples such as their inability to have a lessee pay the taxes, their potential liability to third persons because ground lessors cannot compel Republic to carry insurance, and their inability to require Republic to maintain the premises in good repair and safe condition.

While such a result may seem harsh, it is nevertheless clear that ground lessors subordinated their rights to those covenants as against Lorraine's mortgagees. The lease drafted by ground lessors' attorney leaves no doubt that "[t]he interest of the Lessors in the leased premises * * * shall be junior and subordinate to the interest of any mortgagee or mortgagees of the Lessee's interest in the leased premises and the building or buildings thereon."

 The ground lessors are not, however, totally without remedies. As a mortgagee in possession of the property, Republic is akin to a trustee and must exercise good faith and reasonable diligence in the care of the property. See, 2 Glenn, Mortgages, § 215. Thus, Republic has a fiduciary responsibility to maintain the property on behalf of the ground lessors, but does not step into the shoes of the lessee.

Although affirming the trial court's decision, we feel one aspect needs clarification. On March 6, 1978, the trial court ruled that ground lessors may not receive rent income after the period of redemption. For the next 35 years, Republic would, under this ruling, derive the income from the land, even if it is in excess of the amount Republic is owed.

 In cases where a fee owner subordinates its interest to a long-term mortgagee, after the latter forecloses and receives the amount it is owed, the excess is turned over to the mortgagee next in line of priority. Although a leasehold interest is involved in the instant case, the same right to receive remuneration is applicable. To allow Republic to have the land, essentially free, for the next three and one-half decades without having to pay any excess rent to the ground lessors is an unjust enrichment. If, however, Republic's mortgage is not satisfied, then ground lessors do not have a right to the excess rent. Their interest in the lease, in particular to rent, is subordinated to, not extinguished by, Republic's interest.

 Thus, as a result of the foreclosure, Republic becomes in essence a trustee for a commercially reasonable time, in this case at most until the year 2013. The gross rents shall be disbursed annually in the following order: first, Republic shall pay the usual landlord expenses and shall pay real estate taxes (depreciation, of course, will not be an allowable expense); second, Republic shall retain an amount that will reimburse it for costs of foreclosure and attorneys fees and that will amortize the principal amount of its claim plus interest at the rate provided in the original mortgage until the year 2013 or until the principal and interest are paid in full, whichever occurs first; third, Republic shall retain amounts owed to it as a result of deficient amortization, if any, in previous years; fourth, Republic shall pay to ground lessors the annual rents that they would have received had Lorraine not defaulted plus any rents if any, owed as a·result of deficiencies in previous years; and fifth, Republic shall retain any excess rental income so as to reduce the balance of the foreclosed mortgage. This scheme is to be employed annually and in this sequence until the gross rent is expended. Deficiencies as to the usual landlord expenses, real estate taxes, prior amortization payments still owed to Republic, and prior rents still owed to ground lessors shall be applied to succeeding years, again in the same order that is outlined above. Thus, Republic shall act akin to a trustee until the year 2013 or until its above-stated expenses and interests are repaid, whichever occurs first. Because of the unique circumstances of this case, we have thus fashioned an equitable remedy to protect the interests, as much as possible, of all the parties.

Thus, on all issues raised we find that the trial court carefully, skillfully, and accurately analyzed all of the exhibits and facts submitted to it and arrived at the correct result. The facts generally were not in dispute, and the facts that were in dispute were not applicable to the legal issues raised. We have only deemed it necessary to clarify and amend the duties and rights with respect to future rentals.

The trial court is affirmed in part and modified in part.

OTIS, J., took no part in the consideration or decision of this case.