Daniel Keith DAVIS, a minor, by Edward Charles DAVIS, his father and natural guardian, and Edward Charles Davis and Linda Morphet Davis, his parents, Respondents,

v.

OUTBOARD MARINE CORPORATION, et al., The General Accident Assurance Company of Canada, Appellants.

Nos. C4-87-1188, C8-87-1422.

Court of Appeals of Minnesota.

Nov. 24, 1987.

Review Denied Jan. 28, 1988.

Eric J. Magnuson and Roger R. Roe, Jr., Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Richard A. Bowman, Hildy Bowbeer and Cynthia J. Atsatt, Bowman and Brooke, Minneapolis, for appellants Outboard Marine Corporation, et al.

Richard P. Mahoney and Shiela Ann Engelmeier, Mahoney, Dougherty and Mahoney, Minneapolis, for appellant General Acc. Assur. Co. of Canada.

Heard, considered and decided by WOZNIAK, P.J., and NORTON and IVERSON,* JJ.

## OPINION

IRVING C. IVERSON, Judge.

This is a consolidation of two appeals. Outboard Marine Corporation (OMC) appeals from the money judgment of the trial court. This judgment purportedly reflected the settlement agreement amongst the parties. The trial court ruled that the settlement was expressed in U.S. dollars and OMC claims it was in Canadian dollars.

General Accident Insurance Company of Canada, Ltd. (General Accident), OMC's liability carrier, appeals from an order denying its post-judgment motion to intervene in this case. General Accident claimed it was entitled to be a party to the original action because (1) its interest was adverse to OMC (its insured) and (2) it was not adequately represented by OMC at trial. The trial court denied General Accident's motion as untimely.

## FACTS

The three defendants in this case are:

(1) Outboard Marine Corporation (OMC), a Delaware corporation with principal place of business in Illinois;

(2) Johnson Motors, a division of OMC; and

(3) Elmer N. Olson Company (Olson), a Minnesota corporation with principal place of business in Minnesota. (Olson is a Minnesota retailer of OMC products.)

Respondent, Daniel Davis, was injured in 1980 while riding a snowmobile manufactured by an OMC subsidiary and sold by Olson. Davis suffered head injuries and brought this action alleging negligence against all defendants and also asserting that the snowmobile was defective and unreasonably dangerous as manufactured, designed and sold.

After lengthy discovery, OMC and Davis entered into negotiations. The negotiations between counsels for OMC and Davis were joined in by James Harrell, Litigation Supervisor for intervenor General Accident.

General Accident is a Canadian insurance company not licensed to do business in Minnesota. The principal insured under the applicable liability policy is Outboard Marine Corporation of Canada, Ltd. (OMC-Canada). OMC-Canada is a Canadian subsidiary corporation of OMC with its place of business in Petersbrough, Toronto. OMC-Canada manufactured the particular snowmobile upon which respondent was riding when he was injured.

Although OMC-Canada is the principal insured, the policy also insures "any allied and/or associated and/or affiliated and/or subsidiary company as heretofore or hereafter constituted." All parties agree that OMC is also insured under the terms of the policy as an affiliated or associated company. It is not clear why OMC-Canada was not also named as a defendant.

The insurance policy between the two Canadian corporations (General Accident and OMC-Canada) was first entered into on December 31, 1962. Since that date the policy has been renewed, endorsed and supplemented numerous times. The policy was negotiated on a yearly basis through a Canadian insurance brokerage house in Toronto, Ontario.

All amounts in the policy, endorsements and supplements are expressed in dollar amounts. The policy in effect as of the accident in 1980 had total stated liability limits of $500,000 per person and $1,000,-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

000 for the 1980 policy year. However, nowhere is there an express designation whether the dollars are U.S. or Canadian. At all times since 1962, the premiums stated in the policy were paid in Canadian dollars.

In early December, counsel for Davis spoke with Harrell of General Accident. Harrell said that the remaining amount payable on the policy was approximately $480,000 Canadian. On December 11, 1986, Davis' counsel hand-delivered a letter to OMC's counsel offering to settle the case for the policy limit. Davis' counsel recited in the letter that Harrell had recently told him that the policy limit was $480,000 Canadian.

Davis' counsel then phoned Harrell of General Accident on December 12, 1986. Counsel and Harrell agreed to settle the case for the remaining total payable under the insurance policy. Davis' counsel immediately wrote a confirming letter to Harrell which read, in part:

The amount of this settlement has not been established because it is subject to confirmation by your company providing a certified copy of the policy to me as well as a sworn affidavit of an authorized vice president outlining the policy period, policy number, insured and policy limits. You will further provide a full and complete detail of any and all previous payouts under that policy including the date of the payout, amount of the payout, and the name and address of the entities to whom payouts were made. My clients have agreed to accept the full amount of the liability policy limits available, U.S. or Canadian, subject to the verification just described. * * *

While we did not discuss the matter specifically, assuming that you can prove that your policy limits are payable only in Canadian dollars, I would suggest that we use the exchange rate published in the December 12, 1986 issue of the Wall Street Journal for purposes of determining the appropriate rate. I will assume

this is agreeable with you unless I should hear from you to the contrary.

Soon thereafter, General Accident provided Davis' counsel with a copy of the policy, along with a sworn statement by an officer as to dates of the policy, policy limits and payouts made. The affidavit stated that $20,000 Canadian was paid to a plaintiff in a Wisconsin state court action and $500,000 Canadian to a plaintiff in a Mississippi state court action.[1] The affidavit concluded with a statement that the remaining amount payable for the policy year was $480,000 Canadian.

After reviewing the policy and sworn statements, Davis' counsel insisted on payment of $480,000 U.S., claiming that the policy was silent as to the type of dollars and that there was no other suitable proof the policy was payable in Canadian dollars. Davis brought a declaratory judgment action and the trial court ordered judgment for $479,462.09 U.S. The court reasoned that "[s]ettlements involving injuries to U.S. citizens occurring in this country due to products * * * sold in this country, should be payable in American dollars."

After learning of the adverse judgment, General Accident moved to intervene to reduce the judgment. The trial court denied the motion to intervene as untimely.

## ISSUES

1. Did the trial court err in ruling that the insurance policy expressed liability limits in U.S. and not Canadian dollars?

2. Did the trial court err in dismissing General Accident's motion to intervene as untimely?

## ANALYSIS

The parties agreed to settle for the remaining amount of insurance coverage—whether it was $480,000 Canadian or U.S. Therefore, this is a contract construction issue as to what the term "dollars" means in the insurance contract between OMC–Canada and General Accident.

---

1. General Accident had actually been obliged to pay $20,537.91 Canadian (and not $20,000) on the Wisconsin claim.

The parties dispute whether Minnesota or Ontario law should apply to this case. However, no true conflict exists because there is no significant distinction between the two jurisdictions' laws of contract construction. *See e.g.* Canadian Encyclopedic Digest (Ontario) 3rd *Contracts* §§ 492–94, 498, 499, 503, 506, 508, 510, 517–20, 523, 528 and 530 (Supp.1986). Where there is no true conflict, the law of the forum, in this case Minnesota, is applied. *Forsyth v. Cessna Aircraft Company,* 520 F.2d 608, 612 (9th Cir.1975).

In construing any contract, the court must give all terms their plain, ordinary and popular meaning so as to effect the intent of the parties. *Ostendorf v. Arrow Insurance Company,* 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). The parties' intent should be determined, "not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which words and phrases are given a meaning in accordance with the obvious purpose of the * * * contract as a whole." *Cement, Sand & Gravel Co. v. Agricultural Ins. Co.,* 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947) (quoted in *Republic National Life Insurance Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 354 (Minn.1979), *reh'g denied* (May 31, 1979)). *See also, Boe v. Christlieb,* 399 N.W.2d 131, 133 (Minn.Ct.App.1987). Only if the contract is ambiguous will the court consider extrinsic evidence to aid in construction. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn. 1982).

A contract is ambiguous if it is reasonably susceptible of more than one construction. *Employers Liability Assurance Corporation v. Morse,* 261 Minn. 259, 264, 111 N.W.2d 620, 624 (1961). Whether or not a contract is ambiguous is a question of law. *Id.* at 263, 111 N.W.2d at 624. Respondent claims the contract is susceptible of more than one reasonable construction because it does not expressly designate whether "dollars" means Canadian or U.S. dollars. We disagree.

Looking only at the written contract itself we can determine that it had been in force from 1962 through the date of the accident in 1980. The insurance company (General Accident) and the named insured (OMC–Canada) were Canadian corporations with principal places of business in Canada. In addition, the policy and all endorsements and renewals were procured through a Canadian brokerage firm whose stamp appears on the front page as well as at various other places throughout the contract.

The written contract, taken as a whole, shows a long-standing contractual relationship among three Canadian nationals. Given these facts, it is clear that the term, or symbol, "dollars" must mean Canadian dollars. It would be absurd to think that the Canadian parties somehow contemplated coverage in U.S. dollars where the only connection with the United States is that one of the additional insureds (OMC) was incorporated and doing business in the United States. Such an absurd construction is to be avoided. *Employers Mutual Liability Insurance Co. of Wisconsin v. Eagles Lodge of Hallock, Minnesota,* 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969). Consequently, we hold that the insurance contract is unambiguous because the term "dollars" can reasonably mean only Canadian dollars.

Even assuming the term "dollars" is ambiguous, an analysis employing contract construction principles inevitably leads to a finding that the term meant Canadian dollars. The construction of an ambiguous term is an issue of fact. *Turner v. Alpha Phi Sorority House,* 276 N.W. 2d 63, 66 (Minn.1979). However, since the trial court considered only documentary evidence, this court may review the facts de novo. *Northern States Power Co. v. Williams,* 343 N.W.2d 627, 630 (Minn. 1984).

The goal in construing a contract is to determine and give effect to the intent of the parties to the contract. *Karim v. Werner,* 333 N.W.2d 877, 879 (Minn.1983). To infer the parties' intent, the court should look to (1) circumstances surrounding the making of the contract and (2) the parties' own subsequent interpretations of

the contract. *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946, 951 (D.Minn.1981), *aff'd and remanded*, 664 F.2d 660 (8th Cir.1981).

■ The circumstances surrounding the making of the contract all indicate the three Canadian parties intended to deal in Canadian and not U.S. dollars. The policy and endorsements and renewals were all negotiated and executed in Canada. Even more significant is that OMC–Canada always paid its premiums in Canadian dollars.

Many portions of the written contract designate the dollar amount of premium required to achieve a certain dollar amount of coverage. By paying and receiving premiums in Canadian dollars, the parties obviously intended "dollars" to mean Canadian dollars when applied to the premium amounts stated in the contract. In the absence of evidence that the parties desired an internal inconsistency in the contract, we must conclude that "dollars" also meant Canadian dollars when applied to the stated coverage amounts. This conclusion results from construing the contract as a whole and harmonizing all terms where possible. *See Cement, Sand & Gravel Co.*, 225 Minn. at 216, 30 N.W.2d at 345; *see also Country Club Oil Co. v. Lee*, 239 Minn. 148, 151–52, 58 N.W.2d 247, 249 (1953).

The parties' subsequent interpretation of the contract also indicates their understanding that coverage amounts were expressed in Canadian dollars. OMC had already drawn upon the General Accident policy for accidents occurring in 1980. In the case involving the Mississippi citizen suing in a Mississippi court, OMC accepted $500,000 Canadian from General Accident as payment of the full per-person liability limit. Since OMC was self-insured for excess liability it had an economic incentive to demand the higher coverage of $500,000 U.S. OMC's prior acceptance of the lower Canadian dollar amount strongly suggests that the parties intended coverage to be in Canadian dollars. Consequently, by handling a claim in terms of the Canadian dollar limit, the parties effectively interpreted "dollars" to mean only Canadian

dollars. *See Medtronic*, 518 F.Supp. at 951; *see also New York & Pennsylvania Co. v. Davis*, 9 F.2d 911 (3rd Cir.1926) (parties dealing solely in U.S. currency deemed to have interpreted "dollars" to mean U.S. dollars).

■ Davis argues that the contract should be construed against the drafter, General Accident. *See Safeco Insurance Company v. Lindberg*, 380 N.W.2d 219, 222 (Minn.Ct.App.1986), *aff'd*, 394 N.W.2d 146 (Minn.1986). Therefore, Davis asks this court to compare the exchange rate between the U.S. and Canadian dollar and require the insurance company to pay the more valuable currency. However, the rule of construction against the drafter does not "ineluctably lead to the conclusion that the drafter is to lose." *Alpha Phi Sorority House*, 276 N.W.2d at 67. In this case, where the parties' intent can be clearly determined from their actions in forming and interpreting the contract, we will not resort to the rule of construction against the drafter. *See Benson v. City of Little Falls*, 379 N.W.2d 711, 713 (Minn.Ct.App. 1986).

■ In conclusion, we find that the trial court erred in interpreting "dollars" to mean U.S. dollars. Whether or not the contract is deemed ambiguous, it can only be construed to require coverage expressed in Canadian dollars. Intervenor General Accident's appeal is moot because it intervened to reduce its liability and our decision in favor of OMC does just that. *See Matter of Inspection of Minnesota Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984).

## DECISION

The trial court erred in ruling that OMC was required to pay a settlement in terms of U.S. rather than Canadian dollars. Since respondent has been paid the Canadian dollar amount of the settlement, the Clerk of the District Court is ordered to fully discharge the judgment against OMC, Johnson Motors and Elmer N. Olson Com-

pany. Intervenor General Accident's appeal is moot and is therefore dismissed.

Reversed in part and dismissed in part.