**In the Matter of the MAY 8, 1987 ASSESSMENT BY THE MINNESOTA INSURANCE GUARANTY ASSOCIATION.**

No. C3–88–771.

Court of Appeals of Minnesota.

Aug. 30, 1988.

James A. Neal, Anoka, for Relator American Ass'n of Crop Insurers.

Michael J. Ahern, Minneapolis, for respondent Minnesota Ins. Guar. Assn.

Michael A. Hatch, Com'r, Dept. of Commerce, respondent, Hubert H. Humphrey III, Atty. Gen., Jerome L. Getz, Sp. Asst. Atty. Gen., St. Paul, Minnesota Dept. of Commerce.

American West Ins. Co., Attn: James H. Overholt, Eden Prairie, pro se.

Bituminous Casualty Corp., Attn: Hugh Alexander, Denver, Colo., pro se.

Dawson Hail Ins. Corp., Attn: Dennis Christofferson, Fargo, N.D., pro se.

Heard, considered, and decided by FOLEY, P.J., NORTON and LESLIE *, JJ.

## OPINION

DAVID R. LESLIE, Judge.

The American Association of Crop Insurers (AACI) appeals the Commerce Commissioner's determination that an assessment of the Minnesota Insurance Guaranty Association was not preempted by federal law. In the alternative, AACI disputes the effective date of the eventual preemption of Minnesota law. We affirm.

## FACTS

The Minnesota Insurance Guaranty Association (MIGA) was created and operates pursuant to Minnesota Statutes § 60C.01–20 (1986). Its members consist of all insurers transacting business in Minnesota in certain kinds of insurance, including Multiple Peril Crop Insurance (MPCI). MIGA was formed to provide a mechanism for the protection of Minnesota insureds against financial loss due to liquidation or failure of their insurer. Minneso-

ta law authorizes MIGA to assess its member insurers in order to pay claims of policy holders who have been unable to collect on a covered loss due to the insolvency of their insurer. The assessment is imposed on each member based on its relative proportion of the total property casualty insurance business written in Minnesota in a given year.

On May 8, 1987, MIGA assessed its members for loss claims, return of unearned premiums, and expenses resulting from the insolvency of thirteen insurance companies. The assessments levied were based upon premiums collected during calendar year 1986. Notice of the assessment was sent to each MIGA member.

Several insurers objected to the portion of the assessment which was based on premiums for MPCI, arguing that the assessment had been preempted by federal law. MIGA, however, is of the opinion that federal preemption was not effective until July 1, 1987.

### The Federal Legislation

The Federal Crop Insurance Act (FCIA) was adopted in 1938 to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502 (1986). The act created the Federal Crop Insurance Corporation (FCIC) as an agency within the U.S. Department of Agriculture.

In 1980, Congress amended the FCIA. The amendments provided authorization for the FCIC to offer an expanded reinsurance program to insurers. The FCIC may enter into contracts necessary to the conduct of its business, and:

State and local laws or rules shall not apply to contracts * * * of the Corporation or the parties thereto *to the extent that such laws or rules are inconsistent with such contracts.*

7 U.S.C. § 1506(k) (emphasis added).

In order to implement the reinsurance program, the FCIC prepared a standard

reinsurance agreement to be used by the insurer and the FCIC. The agreement was amended in 1985. The 1985 standard reinsurance agreement provides the FCIC with the power to undertake the obligations of an insurer:

> Whenever any company reinsured hereunder is unable to fulfill its obligations to any policy holder reinsured herein, * * * all policies * * * that are in force and subject to this Agreement as of the date of such inability or failure to perform shall, *at the request of FCIC, be immediately transferred to FCIC. In the event of such a transfer,* FCIC shall assume all obligations for unpaid losses whether occurring before or after the date of transfer.

(Emphasis added.)

### The 1987 Federal Regulations.

On February 26, 1987, FCIC published a proposed rule entitled "Standard Reinsurance Agreement—Standards for Approval." 52 Fed.Reg. 5773. Following a period for written comment, the FCIC published a final rule on May 11, 1987. The rule stated that its effective date was May 11, 1987. The summary portion of the published rule stated that:

> The intended effect of this rule is to: (1) modify financial standards and financial reporting requirements [applicable to FCIC reinsurance] effective for the 1988 contract year (beginning July 1, 1987); (2) *provide for the mandatory assumption by FCIC of all obligations for unpaid losses on policies reinsured under the Standard Reinsurance Agreement;* (3) provide that no assessment for any State guaranty fund may be computed or levied against companies for, or on account of, any premiums payable on policies of Multiple Peril Crop Insurance reinsured by FCIC.

52 Fed.Reg. 17540 (emphasis added). The "background" portion of the rule provided, in part, as follows:

> Most state laws regulating insurance provide for a guaranty fund assessment whereby the State obtains funds from regulated insurance companies licensed to operate within that State.

> \* \* \* \* \* \*

> FCIC has determined that state laws or rules providing for guaranty fund assessment for the purpose of discharging unfunded obligations of insurance companies should be preempted because the Standard Reinsurance Agreement provides adequate insurance that, with respect to Multiple Peril Crop Insurance reinsured by FCIC, any such state requirements will be properly met.

> It is therefore determined that no such unfunded obligations, as are provided for an required by some state laws of insurance practice, will arise under any FCIC reinsured multiple peril crop insurance business conducted in any state and that such business should not be subject to any guaranty fund assessment.

> For this purpose, FCIC exercises the preemptive authority contained in 7 U.S. C. 1506(k) by: (1) providing for the mandatory assumption by FCIC of all obligations for unpaid losses on policies reinsured under the Standard Reinsurance Agreement; and (2) asserting that no assessment for any state guaranty fund may be computed or levied against companies for, or on account of, any premiums payable on policies of Multiple Peril Crop Insurance reinsured by FCIC.

52 Fed.Reg. 17542.

All parties agree that the FCIC can preempt (and has) MIGA as it applies to MPCI; the question is whether the preemption occurred prior to the May 11, 1987 rule promulgation. The parties also dispute the effective date of the preemption under the May 11 rule.

On October 26, 1987, a hearing was held before an Administrative Law Judge (ALJ). After hearing testimony and allowing posthearing briefs, the ALJ issued his Findings of Fact, Conclusions, and Recommendation. He recommended denial of the appeal, as he found no basis for AACI's claim that MIGA's assessment was preempted by federal law. The Commissioner of Commerce's representative agreed with the

ALJ and issued an order denying the appeal. AACI appeals from that order.

## ISSUES

1. Did the FCIC preempt MIGA prior to its promulgation of the May 11, 1987 rule?

2. Did the ALJ correctly determine the effective date of the regulation preempting state MIGA law to be July 1, 1987?

## ANALYSIS

### Standard of Review

The issue in this case involves when the FCIC exercised its power to preempt MIGA's authority to assess its members for losses from insolvent insurers. This issue is legal in nature; it involves a determination of whether FCIC's 1985 Standard Reinsurance Agreement preempted MIGA's authority, and an interpretation of the effective date of the federal rule. An appellate court may reverse an agency decision if the decision was effected by an error of law. Minn.Stat. § 14.69(d) (1986); *Northern States Power Co. v. Minnesota Public Utilities Commission*, 344 N.W.2d 374, 377 (Minn.1984), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 850.

■ 1. 7 U.S.C. 1506(k) provides that state law is preempted to the extent it is inconsistent with FCIC contracts or agreements. AACI claims that the insurance contract used by the FCIC is inconsistent with the state MIGA statute, and hence preempted.

As noted earlier, the 1985 Standard Reinsurance Contract provides for FCIC involvement in the case of an insolvent insurer:

> Whenever any company reinsured hereunder is unable to fulfill its obligations to any policy holder reinsured herein, * * * all policies * * * that are in force and subject to this Agreement as of the date of such inability or failure to perform *shall, at the request of FCIC, be immediately transferred to FCIC.* In the event of such a transfer, FCIC shall assume all obligations for unpaid losses whether occurring before or after the date of transfer.

(Emphasis added.) The ALJ and the Commissioner both concluded that the above language provided for the permissive, rather than mandatory (and hence preemptive), assumption of the obligations of an insured by FCIC. Besides the unambiguous nature of the language of the contract (providing that the FCIC must "request" transfer, and the fact that the language "in the event of such a transfer" implies the obligation is not mandatory), there are two other reasons for logically rejecting AACI's claim of preemption.

First, it makes little sense for the FCIC to promulgate a rule specifically preempting state guaranty funds if the FCIC had already preempted those funds by virtue of the 1985 contract.

Second, both the proposed and final preemptive regulation use prospective language in describing what the regulation will do. The regulation is to "make mandatory" FCIC's obligations, and the FCIC wished "to add a further element of reinsurance with respect to * * * the assumption by FCIC of all obligations for unpaid losses on policies reinsured [by FCIC]." *See generally* 52 Fed.Reg. 5773–5777 (February 26, 1987) and 52 Fed.Reg. 17540–17546 (May 11, 1987) (both using prospective language). The preemption clearly applies only to the future.

AACI argues the language in the reinsurance contract is ambiguous, and that this court may look to extrinsic evidence to determine the intent of the parties when interpreting this contract. A writing is ambiguous if, judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning. *Employers Liability Assurance Corp. v. Morse*, 261 Minn. 259, 264, 111 N.W.2d 620, 624 (1961); *see also Metro Office Parks v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973) (where language used by parties is plain and unambiguous, no need for resort to parol evidence for construction of contract). The language in this contract is susceptible to only one meaning. The reinsurance contract is not ambiguous; it provided the

FCIC with the *option* to undertake the obligations of failed insurers. We need not address AACI's attempts to create an ambiguity in the contract through resort to parol evidence.

AACI also contends that a 1987 amendment to the Minnesota MIGA statute creates an inconsistency with the federal statutory scheme. This amendment, however, only applies to potential 1988 MIGA assessments, which are not at issue in this proceeding. We decline AACI's invitation to issue an advisory opinion on this matter.

2. AACI also disputes the Commissioner's ruling that the May 11 federal regulation (preempting MIGA and other similar state programs) is not effective until July 1, 1987. It argues that the language specifically making the effective date of the regulation May 11, 1987, preempted state law on that date, rather than on July 1, 1987.

The regulation does state that its effective date is May 11. In several other places, however, the regulation states that it is only effective for the 1988 contract year beginning July 1, 1987. *See, e.g.,* 52 Fed.Reg. 17540 and 17542. This apparent inconsistency is resolved in a comment to the May 11 rule:

> The standard reinsurance agreement for the 1988 contract year will be issued to commercial insurance companies on July 1, 1987. In order for these commercial insurance contractors to have sufficient time to study and be in compliance with these financial and operational requirements before entering into agreement with FCIC, it is necessary that these standards be made effective as soon as possible. Therefore, good cause is shown for making the rule effective in less than thirty days.

52 Fed.Reg. 17542. The regulation was made effective on May 11 to assure insurers that these would be the rules that would apply to the upcoming contract year, so the insurers could plan accordingly. The preemption was not effective until the contract year beginning on July 1, 1987.

## DECISION

The clear language of the 1985 agreement gives FCIC the power of, but does not mandate, FCIC intervention. Therefore, the MIGA assessment was not preempted by the federal contract. The preemptive regulation applies to contract years beginning on July 1, 1987.

AFFIRMED.