Argued September 17; affirmed October 15, 1947

# MILLER *v.* CORVALLIS GENERAL HOSPITAL ASSOCIATION

185 P. (2d) 549

*Karl T. Huston* and *Jay L. Lewis,* of Corvallis, (Oehler & Huston and Jay L. Lewis, of Corvallis, on the brief), for appellant.

*Norman K. Winslow,* of Salem, for respondent.

Before Lusk, Acting Chief Justice, and Belt, Kelly, Bailey and Hay, Justices.

BAILEY, J.

This is an action by plaintiff, E. A. Miller, against Corvallis General Hospital Association, a corporation, to recover on a matured, interest-bearing bond, executed under date of May 1, 1926, reading as follows, to wit:

"UNITED STATES OF AMERICA

No. 35 State of Oregon $500.00

CORVALLIS GENERAL HOSPITAL ASSOCIATION

Income Second Mortgage Gold Bond
(Registered)
Total Issue $49,600.00

"KNOW ALL MEN BY THESE PRESENTS: That CORVALLIS GENERAL HOSPITAL ASSOCIATION, a corporation organized and exist-

ing under the laws of Oregon, hereinafter called the "Association," for value received, hereby promises to pay to the registered holder hereof, at the office of Benton County State Bank in Corvallis, Oregon, the sum of Five Hundred Dollars ($500.00), in Gold Coin of the United States of America, on the tenth day of May, 1938, subject, however, to redemption at any time before maturity, at the option of the Association, at par and accrued interest, and to pay such interest thereon not exceeding six per cent. per annum from May 10, 1926, as the Board of Trustees of the Association shall ascertain, determine and declare, as provided in the mortgage and deed of trust herein mentioned, to be payable pro rata on the bonds of this Association, of which this bond is one, out of the surplus net earnings and income of the hospital and other property covered by said mortgage and deed of trust, such interest when declared being payable at said office of Benton County State Bank in Corvallis, Oregon, annually on the tenth day of May in each year after 1926. Interest on this bond shall be cumulative at the rate of six per cent. per annum as provided in said mortgage and deed of trust, and the Association agrees, whenever the principal of this bond shall become due, to pay all arrears of interest at said rate to such due date and whether theretofore declared payable or not. No installment of interest shall be declared payable of less than one per cent. on account thereof, and the rate of interest declared to be payable shall in every instance be such minimum amount of multiples thereof. Installments of interest shall be paid by check mailed to registered holders at their addresses as shown on the register of the Trustee.

"Both the principal and interest of this bond are payable without any deduction for any tax or taxes of the United States, or any State, county or municipality therein, which the Association may be required to pay or retain therefrom under any present or future law.

"This bond is one of an issue of registered bonds of the Association of like tenor except as to amount and number, known as its Income Second Mortgage Gold Bonds, aggregating the sum of $49,600.00, and secured by a Second Mortgage and Deed of Trust of even date herewith executed by the Association to E. E. Johnson, as Trustee, upon real property of the Association, to which reference is hereby made for a statement of said property, a definition of the terms and conditions upon which said bonds are issued, the manner in which the net income of the Association is to be ascertained, determined and applied and the rights of the holders of said bonds.

"This bond is transferable only by the registered owner hereof, in person or by attorney duly authorized, on the books of the Trustee, and the same duly noted hereon.

"In case of any default under the terms of said mortgage and deed of trust, the principal of this bond and all arrears of interest whether theretofore declared payable or not shall become due in the manner and with the effect and subject to the conditions of said mortgage and deed of trust.

"This bond shall not be valid or become obligatory for any purpose unless authenticated by the certificate hereon endorsed of the Trustee under said mortgage and deed of trust.

"IN WITNESS WHEREOF, CORVALLIS GENERAL HOSPITAL ASSOCIATION has caused this bond to be signed in its corporate name by its President and its corporate seal to be hereto affixed duly attested by its Secretary, this first day of May, 1926.

CORVALLIS GENERAL HOSPITAL
ASSOCIATION

By   A. R. Grout, President.

(Corporate seal)

Attest:   Elmer Patrick, Secretary.

(U. S. Internal Revenue Stamps in the amount of $24.80 have been attached to the trust indenture securing this bond and duly cancelled as required by Act of Congress.)''

Defendant in its amended answer, after admitting the execution of the bond and its non-payment, set forth the following facts as an affirmative answer and plea in abatement:

On or about the first day of May, 1926, the defendant and E. E. Johnson executed a trust agreement in connection with the issuance of bonds of the defendant in the amount of $49,600. That agreement, a copy of which is attached as an exhibit to the answer, was thereafter, and on the 8th day of May, 1926, recorded in the mortgage records of Benton county. Section 2 of article VII thereof is as follows:

"No holder of any bond secured hereby shall have the right to institute any suit, action or proceeding, either at law or in equity, for the foreclosure of this instrument or for the execution of any trust or power hereunder or for the appointment of a receiver to take possession of the property embraced hereby, or for any other remedy whatsoever unless the Trustee shall fail to act as herein required and the holders of bonds shall have offered to the Trustee adequate security and indemnity against costs, expenses and liabilities that may be incurred therein or thereby. No one or more holders of bonds secured hereby shall have any right in any manner whatever, by his or their action, to affect, disturb or prejudice the lien of this indenture or to enforce any right hereunder except in the manner in this instrument provided. In the event however, of the refusal or failure of the Trustee to act after an event of default and request to act and after being indemnified as herein provided, then and not otherwise a majority of the holders of the bonds

then outstanding, shall be authorized to institute foreclosure or other legal proceedings.''

Contemporaneously with the execution of the trust agreement and as a part thereof the defendant executed the bond referred to in plaintiff's complaint, together with other bonds of like tenor, ''except as to their principal amounts and dates of maturity,'' aggregating $49,600, of which approximately $46,500 are outstanding and unpaid.

It is further alleged that plaintiff had not complied with the conditions precedent to instituting an action as required by said bond and agreement in the following particulars, to wit: He has never made a written request upon the trustee to take any proceeding at law or in equity; he has never offered to indemnify the trustee against costs, expenses, and liabilities that might be incurred by reason of any such litigation, and he ''has not, at any time herein mentioned, been the holder of not less than twenty-five per cent (25%) of said bonds outstanding.''

Defendant alleged in paragraphs VI, VII and VIII of its affirmative answer that plaintiff, prior to May 1, 1926, had actual notice and knowledge of the provisions of the trust agreement and particularly of the provisions hereinbefore set forth; that there are 242 outstanding bonds, totaling $45,950, of the same series as the bond set forth in plaintiff's complaint, and owned by 119 different holders; that to permit plaintiff to prosecute this action to a conclusion ''would affect, disturb and prejudice the lien of said trust agreement and affect, disturb and prejudice the rights and security of the holders of other bonds secured by said trust agreement and still outstanding, * * * would subject the defendant to a multiplicity of actions

and suits'', and ''would result in the property of the defendant being levied upon and sold on execution sale'', thereby materially reducing and destroying the value of such property and preventing it from being operated as a hospital.

Defendant prayed for judgment against the plaintiff or, in the alternative, for an order and judgment abating the action until plaintiff has complied with the conditions set forth in the trust agreement.

Paragraphs VI, VII and VIII of the affirmative answer and plea in abatment were stricken out on motion of plaintiff on the ground that the allegations set forth therein were irrelevant, immaterial and redundant. Defendant refused to plead further, whereupon plaintiff filed a general demurrer to the affirmative answer and plea in abatement. The demurrer was sustained, and when the defendant declined to plead further judgment was entered in favor of plaintiff for the sum of $500, together with interest thereon at the rate of 6% per annum from the first day of May, 1926. From this judgment defendant has appealed.

The only question here presented is whether the provisions of the bond and trust agreement, especially those of § 2 of article VII of the trust agreement hereinbefore quoted, prevent plaintiff from maintaining this action without first complying with the conditions set forth in § 2 of article VII.

■ This bond is non-negotiable. It is not payable to either order or bearer and is transferable only by the registered owner thereof in the manner prescribed in the bond. The interest thereon prior to its maturity, May 10, 1938, was payable only out of ''surplus net earnings and income of the hospital and other property covered by'' the trust agreement, and the amount

of such interest was to be determined by the board of trustees of the defendant corporation. Defendant, however, promised unconditionally to pay on the 10th day of May, 1938, the principal of the bond with interest thereon at the rate of 6% per annum from May 10, 1926. Nothing has been paid on either the interest or principal.

By the terms of the trust agreement the defendant conveyed to E. E. Johnson, trustee, as security for the payment of an indebtedness in the sum of $49,600, evidenced by bonds hereinbefore mentioned, certain described real property in Corvallis, Oregon, "together with that certain hospital building located thereon and all fixtures thereto appertaining, and all additions that may be made thereto." The trust agreement was subject to the terms of a first mortgage given as security for the payment of other outstanding bonds in the sum of $38,000.

It is provided in the trust agreement that in case default, as therein defined, is made by the trustor, the trustee may, at his option, and shall, upon the written request of the holders of 25 per cent in amount of the bonds secured by the trust agreement and then outstanding and upon the deposit of such bonds with him, declare the principal of all outstanding bonds and all arrears of interest to be due and payable, "and the same shall thereupon forthwith become due and payable, anything in this instrument or in said bonds to the contrary notwithstanding." It is further provided that at any time after such declaration of default, the trustee may, upon the written request of the holders of 25 per cent in amount of the bonds secured thereby and outstanding and the deposit of such bonds with him and upon being properly indemnified to his satisfaction, and shall, upon the written request of the

majority of the bondholders who have also deposited their bonds with him and upon being satisfactorily indemnified as aforesaid, ''institute proceedings and carry on, in such manner as the Trustee by counsel may be advised, such suit to foreclose the lien of this mortgage and deed of trust as may be authorized by law''.

Plaintiff admits that he had knowledge of the provisions of the trust agreement at the time he purchased the bond which forms the basis of this action and concurs in defendant's assertion that the provisions of the bond and trust agreement should be considered together in determining the contract between the parties. He contends, however, that there is nothing contained in those instruments which limits his right to maintain this action.

Defendant, on the other hand, argues that the provisions of § 2 of article VII, hereinbefore quoted, prevent a bondholder, or bondholders, from maintaining any suit, action or proceeding on a bond, or bonds, or on the trust agreement unless the trustee shall have failed to act as required by the terms of the agreement. The portion of that section on which it particularly relies reads as follows: ''No holder of any bond secured hereby shall have the right to institute any suit, action or proceeding, either at law or in equity, for the foreclosure of this instrument or for the execution of any trust or power hereunder or for the appointment of a receiver to take possession of the property embraced hereby, or for any other remedy whatsoever unless the Trustee shall fail to act as herein required''.

In support of its contention that the foregoing restrictive provisions of the trust agreement prevent plaintiff from maintaining this action, under the facts

disclosed by the record, defendant cites and relies upon the following cases: *Muren v. Southern Coal & Mining Co.*, 177 Mo. App. 600, 160 S. W. 835; *Moody v. Pacific S. S. Co.*, 174 Wash. 256, 24 P. (2d) 609; *Block v. Mansfield Mining & Smelting Co.*, 23 Fed. Supp. 700.

■ The opinion in the Muren case· after observing that stipulations, inserted in a mortgage deed securing an issue of bonds and which are aptly referred to in the bonds, restricting the bringing of suits or actions by individual bondholders are valid, said:

"But though such be true, a mortgage or trust deed of all the property of the mortgagor to secure the payment ratably of bonds or obligations issued to or held by numerous creditors does not, in the absence of an express stipulation therein or of a statute to that effect, constitute any defense to an action at law against the mortgagor by each of the creditors upon the bonds or promissory obligations thus secured. See Kimber v. Gunnell Gold Mine, etc., Co., 126 Fed. 137, 61 C.C.A. 203; Chicago, etc., R. Co. v. Fosdick, 106 U. S. 47, 27 L. Ed. 47. Indeed, the common-law right of suing to judgment a written obligation for the payment of money, and admitted to be valid, is of too high a character to be taken away by mere implications, and especially is this true if those implications are to be drawn from instruments other than that which is given in direct and positive acknowledgment of the debt. See Manning v. Norfolk Southern R. Co. (C. C.) 29 Fed. 838. In other words, the common-law right to enforce such obligations in a suit at law remains intact if not taken away by provisions in the contract to that effect. See Jones on Corporate Bonds, etc. (3d Ed.) § 340."

See also in connection with the foregoing well-settled principle of law, 13 Am. Jur., Corporations, 851, § 863; 11 C. J. S., Bonds, 466, § 99; McClelland & Fisher,

Law of Corporate Mortgage Bond Issues, 136; *Scott v. Platt,* 171 Or. 379, 392, 135 P. (2d) 769, 137 P. (2d) 975.

The mortgage involved in the Muren case contained the following restrictive provisions:

> "No holder or holders of any bond or bonds or coupons secured hereby shall have the right to institute any suit, action or proceeding in equity or at law upon any of the bonds or coupons hereby secured, or for the foreclosure of this indenture, or the execution of the trusts hereof, or for the appointment of a receiver, or any other remedy upon the said bonds or coupons, or under this indenture, without first giving notice in writing to the trustee of the fact that said default has occurred and continued as hereinbefore provided; nor unless the holders of a majority in amount of the bonds hereby secured and then outstanding shall have made a request in writing to the trustee and have afforded the trustee a reasonable opportunity to exercise the powers herein granted  *   *   *."

It was held that these provisions of the mortgage prohibited a bondholder from maintaining any suit or action on the bonds or coupons until the trustee had been afforded an opportunity to act.

*Moody v. Pacific S. S. Co.,* supra, was an action upon five bonds which were a part of a larger issue secured by a mortgage. Each of these bonds contained the following clause: "The holder of this bond shall have no right of action thereon or under the said mortgage, except as provided in that instrument." The court, after setting forth the foregoing stipulation, stated: "This language is so clear and unambiguous that its meaning can not be doubted. It says that *no* action may be maintained either upon the bond or upon the mortgage except as provided in the mortgage. This is an unequivocal restriction in the bonds themselves,

and is a direct reference to the mortgage for ascertainment of the rights of the bondholders, and of the trustees as well.''

The third and last case cited by the defendant in support of its contention that the provisions of the trust deed prevent the plaintiff from maintaining this action is *Block v. Mansfield Mining & Smelting Co.,* supra. It also was an action on five bonds which, together with other bonds, were secured by a mortgage. The bonds were dated May 1, 1937, and by their terms were not due until May 1, 1941. They were issued under and pursuant to an indenture executed between the defendant corporation and its subsidiaries. The action was brought in 1937 or 1938, and the plaintiff apparently was relying upon some of the provisions of the indenture for the acceleration of the maturity of the bonds, especially the default of the defendant in making the required payments to the sinking fund created by the indenture. In referring to the matter before it, the court said:

''The terms of the bond and Indenture must be construed together. By the terms thereof the bonds are not due until May 1, 1941. There is no provision in the bond requiring the maintenance of a Sinking Fund. Construing the bonds and the Indenture there is no provision permitting a recovery for the full amount of the bonds. Assuming the position of the plaintiff that there was an obligation to create a sinking fund, a default in the performance of such sinking fund payments would not cause the whole amount of the bonds to become due. In any event there is no remedy in the plaintiff in the event of default until the provisions of the Indenture, Article VIII, Section 9, supra, have been complied with. The remedy upon any default in the sinking fund payments is not with the plaintiff, but is given to the Co-Trustee.''

■ The court further said that, under article VIII, § 9 of the indenture, no holder of any bond "shall have any right of action upon the Indenture" unless and until certain provisions therein set forth shall have been complied with, and that "To permit the plaintiff to sue under the circumstances herein disclosed would create a preference in her favor over other bondholders. Certainly that is not intended in the bonds and the Indenture in suit." This last statement is based upon and is a construction of the clause in the indenture that the holder of every bond expressly covenanted that "no one or more holders" of bonds "shall have any right in any manner whatever" to obtain "priority over or preference to any other such holder with respect" to the security. There is no similar provision in the trust agreement in the case at bar, although it is stipulated in § 2 of article VII thereof that no one or more holders of bonds secured thereby "shall have any right in any manner whatever, by his or their action, to affect, disturb or prejudice the lien of this indenture". Plaintiff's action on the bond will not affect, disturb or prejudice the lien of the trust agreement. *Fleming v. F. & M. R. R. Co.,* 72 W. Va. 835, 79 S. E. 826, 49 L. R. A., N. S., 155; McClelland & Fisher, Law of Corporate Mortgage Bond Issues, 697. But it has been held, although the question is not before us for decision and we express no opinion thereon, that because of the "affect, disturb or prejudice" clause such a judgment creditor "may not levy execution upon the property in the possession of the trustee or subjected to the deed of trust." McClelland & Fisher, ibid., 698; Annotations, Ann. Cas. 1915 D, 983.

There is nothing in the opinion in the Block case adverse to the right of plaintiff to maintain the present

action. The restrictions in the Muren and Moody cases on the rights of bondholders to bring actions except under certain conditions are clear and unambiguous, and precluded the bringing of such actions until certain conditions precedent had been complied with. Each case must be decided upon its particular facts, and because the language in the bonds and trust agreement in the case under consideration is materially different from that in the instruments involved in the cases relied upon by the defendant, such cases are of little assistance in arriving at a determination of the question before us.

We again refer to the provisions of the trust agreement in the case before us for determination. Defendant places special emphasis on the following language in § 2, article VII thereof: "No holder of any bond secured hereby shall have the right to institute any suit, action or proceeding, either at law or in equity, * * * or for any other remedy whatsoever * * *." It asserts that the clause, "or for any other remedy whatsoever" includes any and all actions at law on the bond by the holder thereof.

■ The trust agreement should be interpreted as a whole and the meaning thereof gathered from the entire context and not from particular words, phrases or clauses. The entire agreement should be considered to determine the meaning of each part. 12 Am. Jur., Contracts, 772, § 241.

This section (§ 2, Art. VII) is preceded by those prescribing the duties and powers of the trustee, some of which have been mentioned; others are referred to in § 2 of article VI, as follows: "Under any proceedings brought hereunder by the Trustee for the foreclosure of this mortgage, or otherwise, he shall have the right

to apply for the appointment of a receiver to take charge of the affairs of the Association and to conduct and operate the same, or otherwise provided under the direction of any court of competent jurisdiction.''

It is very apparent from a consideration of the entire trust agreement that § 2 of article VII was included therein to prevent any of the bondholders from interfering with or exercising any of the duties or powers conferred on the trustee until after he had been given an opportunity and had failed to act. The remedies therein mentioned are so linked as to indicate that the obligor was speaking solely for the security.

This court in *Scott v. Platt,* supra, quoted with approval from McClelland & Fisher, Law of Corporate Mortgage Bond Issues, 136, as follows:

"A bond consists of a direct obligation of the issuing corporation to the holder for the payment of a sum of money by the corporation to the holder and vests in the holder the subsidiary and co-existing benefit of the security of a mortgage lien represented by the indenture made between the issuing corporation and the trustee. It would seem that the covenant of payment in the bonds logically should be enforceable by the bondholder, while the security represented by the mortgage should be enforceable in the first instance by the trustee.

"Such fundamental right to sue upon a bond is of too high a character to be taken away by implication from a mortgage given simultaneously for the better security of the bonds. It can be done only by express statement directly prohibiting the right to sue, and limitations on the bondholders' right to foreclose will not be extended to prevent an action at law on the bonds.''

■ The bonds contain an express promise by the defendant corporation to pay the principal thereof at

maturity together with interest thereon at a specified rate. According to their terms they were due on May 10, 1938. Nothing has been paid thereon. The bonds and the trust agreement were prepared by or at the instance of the defendant corporation and any doubtful language therein should be interpreted most strongly against it. 12 Am. Jur., Contracts, 795, § 252. "The promise to pay is plain enough, and those who choose the language and put the bonds on the market should rightly be held to the duty of making equally plain an intention to pare down that promise and the legal rights consequent upon the failure to fulfill it." *Scott v. Platt,* supra, at p. 399.

In our opinion the express promise of the defendant to pay the bonds has not been modified by the provisions of the trust agreement; nor is plaintiff's right to maintain this action restricted by anything therein contained.

The judgment appealed from is affirmed.