**CHARLES W. AND RUBY W. NORTON, INC., an Iowa Corporation, Plaintiff-Appellee,**

v.

**LEADVILLE CORPORATION, a Colorado Corporation, Defendant-Appellant.**

No. 76–1878.

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs Jan. 27, 1978.

Decided Feb. 16, 1978.

L. Don Wyman, Denver, Colo., for plaintiff-appellee.

Gary Margolin, Boulder, Colo., for defendant-appellant.

. Before SETH, Chief Judge, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this action on a series of promissory notes, the questions presented on this appeal are whether the so-called subordination clause in the several notes which acknowledge the superiority in rank of an indebtedness to the First National Bank of Colorado or any other bank or trust company; or a similar clause in other of the notes which specifically subordinate the indebtedness of the plaintiff to the indebtedness owed by defendant-corporation to the First National Bank, operates to render invalid and unenforceable the notes in the hands of the appellee, the payee. We hold that neither form of subordination invalidates the notes.

There are a total of six notes which were issued by defendant-appellant, Leadville Corporation, in the total amount of $275,020.00. Plaintiff demanded a judgment in this amount, together with interest, costs and attorney's fees.

On June 23, 1976, following a trial on the issues, judgment was entered in favor of plaintiff Norton, Inc. against defendant Leadville Corporation in the amount of $275,020.00, plus interest, to June 23, 1976, amounting to $72,252.33 plus an attorney's fee in the amount of $29,660.88. Following a trial to the court, the judge concluded that the subordination clauses were inchoate in that from a reading of the clauses, they were deemed to be effective only when they came into direct conflict with the claims of the First National Bank; that so considered they were not to be regarded as unenforceable. The court ordered that judgment enter holding that each of the notes was valid; that the principal and interest are payable; and that the plaintiffs were entitled to an attorney's fee. The court said, however, that the judgment should reflect the fact that the First National Bank had a right prior to that of plaintiff corporation to collect the debt which was owing to it. The court's judgment said that 10 days prior to any execution by plaintiff of the judgment thus awarded, that the plaintiff corporation must give to the defendant, First National Bank of Denver, the Commercial Bank of Leadville and the Leadville Corporation, written notice of intent to execute; that if objection is made, a hearing "shall be granted by this court pertaining to execution. Execution shall be stayed pending a determination on the issue of execution." The judgment went on to say that if no objection was made in the 10 days' notice period, execution would proceed.

As the trial court noted, there is very little case law on the present subject. The court considered the case of *Standard Brands v. Straile,* 23 A.D.2d 363, 260 N.Y. S.2d 913 (1st Dept. 1965). That case did not turn on the question of subordination. It did discuss briefly the distinction between inchoate and general subordination clauses. It said in respect to the latter that there is no right to payment from the debtor and that "no action would lie against the debtor where, as here, the debtor is also in default to the senior creditor."

The trial court also considered *P. M. Finance Corp. v. Commissioner of Internal Revenue,* 302 F.2d 786 (3d Cir. 1962). In *P. M. Finance Corp.,* the Third Circuit through Chief Judge Biggs, in the course of holding that certain agreements did not create indebtedness for tax purposes, said:

The complete subordination effected by these agreements not only tends to wipe out a most significant characteristic of the creditor-debtor relationship, the right to share with general creditors in the assets in the event of dissolution or liquidation, *John Wanamaker Philadelphia v. Commissioner,* 139 F.2d 644, 647 (3 Cir. 1943), but it also destroys another basic attribute of creditor status: i. e., the power to demand payment at a fixed maturity date. The repayment condition imposed by the banks has rendered this right, expressly granted by the debentures, nonexistent.

302 F.2d at 789–90. It is plain, therefore, that the discussion of complete and inchoate subordination was in a collateral context. What the court held was that the debt claimed was not indebtedness at all, so it does not provide any guidance to a decision in this case.

It would seem that the fountain of all knowledge on this subject is an article entitled "Subordination Agreements," authored by Dee Martin Galligar, 70 Yale L.J. 376.

We agree with the trial court's reasoning that the controversial clauses should not be construed so as to render the contracts unenforceable; that they should be upheld to the extent that they are reduced to judgment even though the execution is stayed in order to give effect to the subordination clauses. The Yale Law Journal article considered the classifications of subordination provisions, but it does not do so in the present context of promissory notes and specific acknowledgments of priority of another obligee.

Although the trial judge held that it was an inchoate subordination insofar as the obtaining of judgment was concerned, it in effect treated it as a complete subordination by requiring that notice be given to the prior creditor before an execution could be carried out. This strikes us as a sensible way to solve the problem. The effect is that the contract is enforceable in accordance with its terms. Since it is so treated, it is unnecessary to elect a category. It is not important whether it is inchoate or absolute.

The judgment of the district court is affirmed.