CONCORD CO–OP, Respondent,

v.

SECURITY STATE BANK OF
CLAREMONT, Appellant.

No. C5–88–1095.

Court of Appeals of Minnesota.

Nov. 29, 1988.

William Oehler, Ward & Oehler, Ltd., Rochester, for respondent.

Mark L. Torgrimson, Michaels, Seeger, Rosenblad & Arnold, Rochester, for appellant.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Security State Bank of Claremont (Bank) appeals from a $90,152.74 summary judgment award to respondent Concord Co-op (Co-op). Co-op initiated this lawsuit alleging that it had "leapfrogged" the Bank's prior perfected security interest in crop proceeds and that the Bank's retention of those proceeds was a conversion. Both Co-op and the Bank had statements of subordinated interest from an earlier interest holder, Production Credit Association (PCA) in Walter Laue's crops. Co-op claimed because PCA gave them their subordination first, Co-op's security interest had priority over the Bank's in farmer Laue's crop proceeds. The court held that because Co-op's subordination preceded the Bank's, "first in time" controlled and therefore awarded the Bank's funds to Co-op. We reverse and remand.

## FACTS

Walter Laue, a farmer, was indebted to several creditors in the crop year 1985. On March 3, 1980, the PCA had received a first security interest in Laue's crops by filing a financing statement with the Dodge County Recorder. This statement was continued by filing on January 16, 1985. On March 22, 1985, the Bank loaned $35,000 to Laue and Laue in turn gave a security interest in his crop proceeds to the Bank. The Bank perfected its security interest by filing on March 25, 1985. On April 24, 1985, Laue granted a third security interest in his 1985 crops to Co-op. Co-op perfected its interest the same day.

PCA granted a subordination of its security interest in Laue's crops to Co-op on April 23, 1985, and to the Bank on April 26, 1985. The Crop Lien Subordination agreement between PCA and Co-op reads in relevant part:

> Pursuant to the terms of an Agreement between [PCA] * * * and Walter E. Laue * * * [PCA] hereby subordinates its lien on the 1985 crop of Walter E. Laue * * * in favor of a lien granted by Walter E. Laue to [Co-op].

After the subordinations, Co-op supplied Laue with $148,963.64 for crop supplies and the Bank supplied $50,285.99 to pay farm rents due under existing rent contracts. Whether the subordinations were exclusive or non-exclusive was an issue before the trial court.

According to an affidavit submitted by Mark Schmidt, Senior Loan Officer of Farm Credit Services, the successor of PCA, Laue's loan with a principal unpaid balance of $750,000 was in substantial arrears. Schmidt claimed PCA never agreed to give an exclusive first lien to Co-op and received no consideration for the subordination agreement. Rather, according to Schmidt, PCA agreed with Laue to provide subordinations to *any* lenders providing new loans because PCA acknowledged that

> lenders having a perfected security interest in crops for new value given to enable Mr. Laue to produce crops during the season had a priority over any indebtedness owing by Walter Laue to the Production Credit Association that was overdue more than six (6) months of the time when crops began to grow.

After Laue's 1985 crop harvest, the proceeds checks from various crop purchasers totaled $167,601.64. On December 30, 1985, Laue, a representative of Co-op, the Bank and certain creditors met. The Bank alleges that Co-op made various verbal representations at this meeting, including giving its consent to the disbursals made by Laue to the Bank and to certain creditors.

Co-op drafted an agreement which was presented and signed on December 30, 1985, stating that $90,152.74 would be distributed to the Bank and $77,448.90 would be distributed to Co-op. The agreement

provided that this distribution was without prejudice to each party's right to sue any other parties for a different distribution of the proceeds and also stated that "objections to this agreement, must be notified in writing prior to Jan. 16, 1986."

Co-op never objected verbally or in writing before January 16, 1986. Pursuant to the December 30th agreement, the Bank received $90,152.74 from the crop proceeds. The Bank subsequently distributed funds as follows: [1]

```
Security State Bank of Claremont .....$21,969.75
Concord Co-op ........................$77,448.90
Orvis Toquam (for 1985 rent) ........$ 8,500.00
Buss Brothers (for 1985 rent) ........$21,455.00
C. Declerk (for 1985 rent)............$ 6,489.99
Alliance Co. (for hail insurance) ......$19,172.00
```

Co-op brought suit against the Bank in June 1986, alleging Co-op's prior security interest. The Bank argues that its disbursements were made with Co-op's approval. The trial court held that nothing in the agreement entitled the Bank to make subsequent disbursements to unsecured creditors. Summary judgment was awarded to Co-op in the amount of $90,152.74.

## ISSUES

1. Did any genuine issues of material fact remain which should have precluded summary judgment?

2. Did the trial court err in its application of Minn.Stat. § 336.9–316 (1986)?

3. Did the Bank properly exercise a right of set-off?

## ANALYSIS

### I.

### SCOPE OF REVIEW

In *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979), the court held:

> On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

Rule 56.03 of the Minnesota Rules of Civil Procedure provides that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

Evidence presented upon a summary judgment motion must be taken in the light most favorable to the non-moving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). The Bank argues that the trial court violated this rule of application by finding against the non-moving party, the Bank, relative to the issue of exclusivity of the subordinations. We agree with the Bank that a genuine issue of material fact exists regarding the exclusivity of these subordinations.

Mark Schmidt, the PCA loan officer, stated in his affidavit that PCA never agreed to exclusivity with Co-op, nor intended that the granted subordinations be exclusive. Schmidt stated that PCA was simply removing itself from a secured party position in any and all priority disputes.

Nothing on the face of the Crop Lien Subordination statement indicates that the subordination is exclusive. The trial court resolved the factual issue of exclusivity as a matter of law stating, "first in time, first in right controls." However, that is only true if the subordination granted was an exclusive one. "On appeal, it is for us to determine whether the trial court was correct in holding that there was no ambiguity * * *." *North Central Public Service Co. v. Village of Circle Pines,* 302 Minn. 53, 58, 224 N.W.2d 741, 744 (1974) (quoting *Employers Liability Assurance Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961)). We find the Crop Lien Subordination agreement ambiguous, and therefore the trial court's resolution of the issue of exclusivity by summary judgment was inappropriate.

The Bank also argues that there is a material fact issue regarding whether Co-

---

**1.** These are the totals listed in the record. We note that they total to a sum different from the $90,152.74 received by the Bank. However, nei-

ther party raises an issue regarding this disparity.

op consented to disbursement of escrowed funds. The December 30, 1985, agreement, which Co-op drafted, imposed the limitation that "objections to this agreement, must be notified in writing prior to Jan. 16, 1986." Co-op made no written or oral objections until June 1986 when it brought this suit. This issue of consent was resolved in Co-op's favor as a matter of law by the trial court when it awarded summary judgment. Again, we conclude that such resolution was inappropriate.

The trial court found that the December 30, 1985, agreement was "plain and unambiguous on its face" and interpreted it without resort to extrinsic evidence. Although the trial court emphasized the parties' recognition that the agreement was to be "without prejudice to each party's right to sue any other parties for a different distribution of the proceeds," the trial court did not address the effect of the requirement that objections be made prior to January 16, 1986.

The Bank claims that Co-op consented orally after the December 30, 1985, agreement to the money distributions made by the Bank. We believe that a genuine issue of material fact exists regarding alleged consent to disbursals and the effect, if any, of the failure of Co-op to object to those disbursals prior to January 16, 1986. The parties must be given an opportunity to address these questions at trial.

## II.

■ Co-op argues that "at the time the Bank obtained the PCA subordination, Co-op had already taken PCA's place as the senior creditor." Co-op premises this argument on Minn.Stat. § 336.9–316, which states, "Nothing in this article prevents subordination by agreement by any person entitled to priority." We do not find this section controlling. By giving subordination agreements to more than one creditor, PCA was simply acknowledging the fact that it was no longer entitled to any priority. It did not determine which of the two creditors had priority. PCA's loan officer claimed that PCA never agreed "to give an exclusive first lien position to Concord Co-op, * * * but rather agreed to provide sub-

ordinations to any lenders providing new loans for farming operations to Walter Laue."

Co-op relies on two cases from foreign jurisdictions to support its claim of prior security interest by subordination under section 336.9–316. In both *Grise v. White,* 355 Mass. 698, 247 N.E.2d 385 (Mass.1969) and *ITT Diversified Credit Corp. v. First City Capital Corp.,* 737 S.W.2d 803 (Tex. 1987), a first secured party subordinated its interest to only one other third party. Neither case deals with more than one competing subordination. When only one subordination is granted, exclusivity is never an issue as it is in this case.

Further, both *Grise* and *ITT* use language which indicates that intent is a critical factor in the analysis of a subordination agreement:

> The holder of the subordinated claim * * * *intends* to relinquish his position only to and for the benefit of *one* creditor * * *.

*Grise,* 355 Mass. at 702, 247 N.E.2d at 389 (emphasis added). This language illustrates the importance of clear intent, when there is only a single creditor. Intent becomes all the more important when multiple subordinations are granted.

> [A] subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the *expressed intention* of the parties and its terms.

*ITT,* 737 S.W.2d at 804 (emphasis added).

■ PCA's intent is critical to resolution of the issues in this matter. Because the parties have failed to explicitly articulate their intent in the subordination agreements, and in light of PCA's subsequent statement that exclusivity was never intended, we cannot agree that Co-op was entitled to "leapfrog" the Bank's prior security position by operation of Minn.Stat. § 336.9–316.

## III.

Finally, the Bank argues that it had the right to set-off against Laue's crop proceeds in possession of the Bank. The endorsed crop proceeds checks were deposited at the Bank. Laue then remitted cash-

ier's checks to various third-party farm creditors and the Bank honored those checks with the crop proceeds.

Whether the Bank had any right of set-off depends on who had the prior security interest. Therefore, disposition of this issue is dependent upon resolution of the issue of whether the granted subordinations were exclusive or non-exclusive. In addition, the issue of set-off will be affected by resolution of the issue of whether Co-op consented to the Bank's disbursement of the crop proceeds.

## DECISION

Issues of material fact exist in regard to exclusivity of subordinations and consent to disbursal of escrowed crop proceeds. Inasmuch as fact issues regarding exclusivity of subordinations remain, Minn.Stat. § 336.9–316 does not permit respondent to "leapfrog" a prior security position of appellant. Determination of appellant's set-off rights must await resolution of the issue of priority of security interests.

REVERSED AND REMANDED FOR TRIAL.