**NORTH STAR UNIVERSAL, INC., Respondent,**

v.

**GRAPHICS UNLIMITED, INC., f/k/a G.U. Acquisition Corporation, Appellant.**

**No. C6–96–2303.**

Court of Appeals of Minnesota.

May 6, 1997.

Considered and decided by WILLIS, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Graphics Unlimited, Inc. appeals from a grant of summary judgment to North Star Universal, Inc. on a promissory note subject to a debt subordination agreement. Because appellant's failure to make its payment under the note constituted a default, and the debt subordination agreement did not preclude North Star from obtaining a judgment on default, we affirm.

## FACTS

The facts of this case are undisputed. On November 1, 1990, respondent North Star Universal, Inc. (North Star) sold 100 percent of the issued and outstanding shares of several graphic arts companies to Graphics Acquisition Corporation, n/k/a appellant Graphics Unlimited, Inc. (GU). The transaction consisted of the following: (1) North Star and GU's Purchase and Sale Agreement; (2) GU's $3,700,000 Term Loan and $750,000 Revolving Credit Agreement (senior debt) with Marquette Capital Bank (Marquette); (3) GU's $400,000 Promissory Note to North Star (note); and (4) North Star, GU, and Marquette's Debt Subordination Agreement.

GU's loan agreement with Marquette included, among other covenants, a net worth covenant. The debt subordination agreement made North Star's claims against GU "wholly subordinate and junior in right to [Marquette]'s Claim and to all present and future interest of [Marquette] in the Collateral." The debt subordination agreement also required Marquette to notify North Star if GU defaulted on the loan agreement with Marquette. Upon notification of default, North Star would not be entitled to principal and interest payments, which would then be "applied on [Marquette's] claim, whether or not then due."

GU's promissory note to North Star defined default as "any failure of [GU] to pay any principal or interest on this Note * * *." In the event of a default on the note, North Star could accelerate its payment: "[North

Brian E. Palmer, Todd C. Pearson, Dorsey & Whitney, L.L.P., Minneapolis, for Respondent.

Scott R. Carlson, Duckson & Carlson, P.L.L.P., Minneapolis, for Appellant.

Star] or any other holder hereof may thereafter bring suit for such amount and exercise any other remedies available." The note described the senior debt as that arising out of the November 1, 1990 loan from Marquette to GU and stated:

> (b) Subordination. This Note shall be subordinated to the Senior Debt as provided by that certain Subordination Agreement, dated November 1, 1990, among Maker, Payee and Marquette Bank (N.A.).

On February 6, 1996, North Star notified GU of GU's failure to pay the initial installment. Two days later, Marquette wrote to North Star and GU and suspended any payments from GU to North Star consistent with the debt subordination agreement. GU had defaulted on its senior debt to Marquette by failing to comply with the net worth covenant.

When negotiations between the parties failed, North Star commenced this action for a judgment in the amount of the balance owed on the note. GU responded on June 21 that it was not in default on the note to North Star because the subordination agreement prevented any payment. GU also counterclaimed for breach of contract, breach of covenant of good faith, and interference with contract. On July 5, 1996, Marquette notified GU that all indebtedness was immediately due.

The parties brought cross-motions for summary judgment which were heard on August 21, 1996. The district court ordered summary judgment for North Star on September 10, 1996, and, after a motion for an award of costs, amended the order to include $1,005 in costs and $21,204 in attorney fees. GU filed a cost bond and appealed the order on November 12, 1996.

## ISSUES

I. Did the trial court err in its conclusion that GU's failure to pay North Star constituted an event of default under the note?

II. Did the trial court err in its dismissal of GU's counterclaims and its grant of attorney fees and costs?

## ANALYSIS

### I.

The question of whether an ambiguity exists in a contract is to be determined by the court as a matter of law. *See Employers Liab. Assur. Corp. v. Morse*, 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). The construction of an unambiguous writing is for the court. *See In re Turners Crossroad Dev. Co.*, 277 N.W.2d 364, 369 (Minn. 1979). When the entire contract has been reduced to writing, the question of the parties' intent can properly be determined by the court. *See Macioch v. Wagner*, 270 Minn. 571, 578 n. 1, 134 N.W.2d 591, 596 n. 1 (1965). These rules of construction are aimed at effectuating the intention of the parties. *See Turner v. Alpha Phi Sorority*, 276 N.W.2d 63, 66 (Minn.1979).

In *Concord Co-op v. Security State Bank*, 432 N.W.2d 195, 197 (Minn.App.1988), this court applied these general rules of contract law to a debt subordination agreement. The court stated:

> [A] subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the *expressed intention* of the parties and its terms.

*Id.* at 198 (quoting *ITT Diversified Credit Corp. v. First City Capital Corp.*, 737 S.W.2d 803, 804 (Tex.1987)); *accord In re Amret, Inc.*, 174 B.R. 315, 320 (M.D.Ala.1994); *In re Lantana Motel*, 124 B.R. 252, 254 (S.D.Ohio 1990).

Here, neither party argues that the contract is ambiguous or disputes the material facts. Their conclusions as to the effect of the contract language, however, differ dramatically. GU argues that under the subordination agreement its default on the senior debt prohibited it from making its payment to North Star. GU argues that this excused its obligation on the note, and it cannot be deemed in default on the note when it was contractually prevented from making the payment. North Star argues that under the express terms of the note, GU defaulted by failing to make the payment. North Star also argues that reducing its claim to a judg-

ment is not prohibited by any term of the subordination agreement.

The crux of the disagreement is the reach of the note provision making the note subordinate to the senior debt. The several instruments constituting the sale transaction were all executed on the same day and should be read to give effect to all provisions. *See Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 114, 153 N.W.2d 281, 288–89 (1967).

Debt subordination agreements are routinely used when a corporate or partnership borrower seeks financing from a commercial lender. The commercial lender typically will insist that all indebtedness of the corporation or partnership to management or others be subordinated to the lender's proposed financing. *See, e.g., Lantana Motel,* 124 B.R. at 255. "The holder of the subordinated claim * * * *intends* to relinquish his position only to and for the benefit of *one* creditor * * *." *Concord Co-op,* 432 N.W.2d at 197. The parties succeeded in doing this, and North Star concedes it is a junior debtor.

GU's argument, however, requires that North Star relinquish its position to all creditors, not just to Marquette. If North Star cannot obtain a judgment, then North Star will subordinate its debt not only to Marquette but also to *all other creditors.* Even though GU was unable to perform its single most important obligation under the note, North Star would have no recourse. Such a modification of the note is neither expressed nor implied in the contract. Furthermore, such an outcome is not required to fulfill the purpose of the debt subordination agreement.

GU claims support for its analysis in *Culp v. Tri–County Tractor, Inc.,* 112 Idaho 894, 736 P.2d 1348 (1987). The *Culp* court decided that the subordination agreement altered the rights and duties in the promissory notes, allowing the debtor to invoke the agreement as a defense to default claims on the note. *Id.* at 1350–51. We disagree with the *Culp* court's analysis. The debt subordination agreement here has a limited purpose and, by its terms, does not negate provisions of the note that were agreed to by GU and North Star.

We find persuasive the reasoning in *Charles W. & Ruby W. Norton, Inc. v. Leadville Corp.,* 570 F.2d 911 (10th Cir.1978). There, the court construed notes that contained subordination clauses. The court decided that the clauses should not be read to render the notes unenforceable. *Id.* at 913. Rather, the notes were upheld to the extent that they were reduced to judgment, even though execution was stayed to give effect to the subordination agreement. *Id.*

We hold that the parties' agreement was unambiguous. Because the parties did not expressly provide otherwise, the debt subordination agreement merely modified lien priorities among the contracting parties. The terms of the note remained enforceable, but execution of any judgment by North Star would be junior to the senior debt. Therefore, summary judgment for North Star was appropriate. *Cf. City of Virginia v. Northland Office Props. Ltd. Part.,* 465 N.W.2d 424 (Minn.App.1991) (summary judgment appropriate where agreement unambiguous).

## II.

GU concedes that its arguments for reversal of the trial court's dismissal of its counterclaims and its award of attorney fees and costs rest on its success in establishing that it was not in default. Having concluded that the trial court correctly entered summary judgment on the issue of default, we also affirm its other rulings.

## DECISION

The trial court correctly concluded that GU defaulted on its note with North Star. Consequently, the trial court properly dismissed GU's counterclaims and awarded North Star attorney fees and costs under the note.

**Affirmed.**