Argued and submitted April 14, summary judgment and supplemental judgment for attorney fees reversed; remanded with instructions November 4, 1998, petition for review denied March 2, 1999 (328 Or 331)

Thomas R. BECKER,
Brian McElmore,
and William R. Bagley Pension Plan,
dba Rampac, an Oregon partnership,
*Respondents,*

*v.*

NORTH'S RESTAURANTS, INC.,
an Oregon corporation,
*Appellant.*

(96-3494-L-3; CA A96435)

967 P2d 1246

Helen T. Dziuba argued the cause for appellant. With her on the briefs were Barry P. Caplan and Sussman, Shank, Wapnick, Caplan & Stiles.

David B. Paradis argued the cause for respondent. With him on the brief were Douglass H. Schmor and Brophy, Mills, Schmor, Gerking & Brophy, LLP.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

This is a breach of contract action involving a convertible subordinated debenture agreement. On cross-motions for summary judgment, the trial court ruled in plaintiff's[1] favor, concluding that defendant's default on scheduled interest payments breached the terms of the debenture agreement. The trial court also determined that, although entitled to judgment, plaintiff is not entitled to payment (*i.e.*, to enforce the judgment) until the senior creditors are paid in full. By way of supplemental judgment, the trial court also awarded attorney fees to plaintiff. On appeal, defendant assigns error to the trial court's denial of its motion, the granting of plaintiff's motion, and the award of attorney fees to plaintiff. Because there are no disputed factual issues, we review the rulings on both motions to determine which party is entitled to judgment as a matter of law. *See Jones v. General Motors Corp.*, 325 Or 404, 420, 937 P2d 608 (1997); *Cochran v. Connell*, 53 Or App 933, 939, 632 P2d 1385, *rev den* 292 Or 109 (1981). We conclude that the trial court erred in awarding summary judgment for plaintiff and that summary judgment for defendant was proper. Accordingly, we reverse and remand.

Plaintiff, an Oregon partnership, invested in defendant, North's Restaurants, Inc., by entering into a convertible subordinated debenture agreement. According to the terms of the contract, plaintiff provided $100,000 to defendant. In return, defendant agreed to make quarterly interest payments and, unless plaintiff exercised the stock conversion right, to make a lump-sum payment of the principal in three years. As provided in the agreement, interest payments were to be made in January, April, July, and October of each year, computed from April 1, 1994. The debenture provided terms of default as:

"7. *Default*. If any of the following events occur (an 'Event of Default'), the entire unpaid principal amount of,

---

[1] The trial court actually granted judgment to "plaintiffs, Thomas R. Becker, Brian McLemore [*sic*], and William R. Bagley Pension Plan, dba Rampac." On appeal, the parties refer only to Rampac as plaintiff. When we refer to plaintiff, we mean those parties doing business as Rampac.

and accrued and unpaid interest on, this Debenture, shall immediately be due and payable, and Holder shall be entitled to all legal and equitable remedies available:

"(a) The Corporation *fails to pay any interest on this Debenture when it is due and payable*, and the failure continues for a period of thirty (30) days[.]"

(Emphasis added.)

As part of the debenture agreement, plaintiff also agreed to subordinate its right to receive payments on the debt to senior creditors:

"6. *Subordination. The rights of the Holder * * * to receive payment of any principal or interest herein, is subject and subordinate to the prior payment of the principal of * * * and the interest* on, all other secured indebtedness of the Corporation [ ] and all unsecured indebtedness to the extent such unsecured indebtedness is owed to a * * * lender who by the express provisions of any contract requires such subordination * * * whether now outstanding or subsequently incurred, and any deferrals, renewals or extensions of such indebtedness or any debentures, bonds or notes evidencing such indebtedness (the 'Senior Indebtedness'). Upon any receivership, insolvency, * * * bankruptcy, * * * or in the event this Debenture is declared due and payable upon the occurrence of a default as defined in this Debenture, then no amount shall be paid by the Corporation with respect to principal and interest hereon unless and until the principal of, and interest on, all Senior Indebtedness then outstanding is paid in full."

(Emphasis added.) Similar debentures were issued to numerous other investors, creating about $2.8 million in debenture debt. About half—$1.4 million worth—of the debentures were eventually converted to preferred stock. Plaintiff's was not.

After entering into the debenture agreement with plaintiff, defendant borrowed funds from two financial institutions, United States National Bank (USNB) and Pacific Mezzanine Fund (PMF). Specifically, defendant borrowed over $8 million from USNB. In the USNB agreement, USNB required subordination of all debenture debts in a clause that

also granted USNB the power to demand suspension of payments of either interest or principal to the subordinated debenture holders as follows:

> "[Defendant] will not pay or prepay (voluntarily by reason of acceleration) any principal on the convertible subordinated debentures until its debts and liabilities to Bank have been paid and will not pay or prepay any interest thereon if [defendant] is in default under this agreement or if the financial statements last provided to Bank before the date of the proposed payment indicate that [defendant] is not in compliance with the fixed charge coverage ratio."

Defendant's $4 million "Senior Subordinated Loan and Security Agreement" with PMF provided PMF with a security interest in defendant's assets. The terms of that agreement acknowledged that PMF's claims were subordinated to USNB's, but superior to plaintiff's, as it constituted "Senior Indebtedness" under the terms of the subordinated debenture agreement.

In June 1996, USNB directed defendant to stop making payments of both principal and interest to the debenture holders, including plaintiff. Plaintiff was later informed that further payments on the debentures had been "blocked" by USNB. When defendant did not make its July interest payment, plaintiff declared defendant in default and gave notice of its intent to accelerate all sums due under the debenture if the default was not cured. Defendant did not cure the alleged "default," and plaintiff initiated this breach of contract action.

Both parties moved for summary judgment, and the trial court awarded summary judgment in favor of plaintiff. The trial court determined that the debenture agreement obligated defendant to make periodic interest payments to plaintiff and that defendant's failure to do so entitled plaintiff to "declare a default and accelerate the principal and interest payments" of the debenture. Significantly, although the court concluded that plaintiff was entitled to judgment on the debt, it also determined that plaintiff could not collect on, or otherwise execute, its judgment until the USNB and PMF loans were satisfied.

On appeal, defendant contends that summary judgment for plaintiff is erroneous and that, instead, summary judgment in its favor is proper. Defendant argues that plaintiff's right to receive payment of interest on the note hinged on the prior payment of principal and interest to PMF and USNB. Thus, the interest was not "due and payable" until the senior creditors were paid in full. Defendant urges that, because the senior creditors had not yet been paid in full, it was not in default on the debt and plaintiff's attempt to obtain a judgment was premature. Plaintiff agrees that it is not entitled to any payment on a judgment unless and until defendant pays the debts owed to PMF and USNB in full. Plaintiff contends, however, that the trial court properly awarded summary judgment in its favor because its subordinated right to receive payments did not impair its right to establish its priority ahead of other general creditors by obtaining a judgment. We agree with defendant that it was not in default and, therefore, that defendant, not plaintiff, is entitled to summary judgment.

The rights and liabilities of parties to subordinated convertible debenture agreements have not been examined in any reported cases in Oregon.[2] Indeed, relatively little relevant case law exists nationally. Therefore, some background is helpful prior to an examination of the particular contract terms of the debenture at hand. A debenture is a "[l]ong term unsecured debt instrument." *Black's Law Dictionary,* 278

---

[2] Although a few Oregon cases have involved corporate bonds, none interpreted agreements with subordination clauses. *See, e.g., Title & Trust Co. v. Security Bldgs. Corp.,* 129 Or 262, 278-81, 277 P 85 (1929) (discussing the validity of acceleration provision in default clause of corporate bond); *Miller v. Corvallis Gen. Hosp. Assn.,* 182 Or 18, 32-33, 185 P2d 549 (1947) (right to sue to enforce bond can only be limited by express statement in the bond; provisions in trust agreement limiting actions to those brought by trustee were not sufficient).

Several Oregon statutes refer to debenture agreements. Although none of the statutes applies here, the definitions and descriptions illuminate the various uses for debentures. Oregon Securities Law, for example, includes debentures in the definition of "security," along with notes, stocks, treasury stock, bonds, and other evidence of indebtedness. *See* ORS 59.015(19)(a). Under Oregon's Bank Act, debentures issued by a bank are called "capital debentures" and are defined as "unsecured obligations issued by an institution or stock savings bank to evidence borrowings where the rights of the lender are subordinate to the rights of depositors." *See* ORS 706.005(10). Upon liquidation, account holders and other creditors of a loan association must be paid in full before payments on capital debentures may be made. ORS 722.208(3).

(abridged 6th ed 1991). Debentures are otherwise known as "corporate bonds" and sometimes are referred to as "junk bonds" when issued by corporations with lower credit ratings for above-market interest rates. 19 *Fletcher Cyclopedia of Corporations*, § 3:98 at 226 (1995). Debentures are often preferred over stock issues as a method for obtaining start-up capital for corporations, because the interest payments generally are deductible on the corporation's income taxes. *Id.* A "convertible" debenture allows the holder to convert the principal amount into stock of the corporation under specified circumstances—commonly, for example, if the corporation "goes public" or offers its stock for private sale. *See Black's Law Dictionary*, 231-32, 278 (abridged 6th ed 1991).

Often, as in this case, debentures are subordinated debt, meaning that the debenture holders have agreed that one or more senior debts will be paid in full before "payment may be made on the subordinated debt and retained" by the subordinate debenture holder. Dee Martin Calligar, *Subordination Agreements*, 70 Yale LJ 376, 376 (1961). Because subordinated debentures usually are regarded by senior debt holders as equity capital, not as debt, debentures are often used as a means of obtaining additional funding. *Id.* Subordination clauses vary in their terms, but they generally involve a common debtor indebted to two classes of creditors: junior creditors (plaintiff, here) and senior creditors (PMF and USNB, here). Peter F. Coogan et al, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements*, 79 Harv L Rev 229, 233 (1965). Typically, the junior creditor accepts a note or debenture that, by its terms, provides that the junior creditor's right to repayment is subordinate, or junior, to payment of the senior debt. The senior creditor obtains priority of payment. *Id.* Furthermore, in the event of the debtor's bankruptcy, the senior creditor often receives " 'double dividends' out of the bankruptcy estate—the dividends paid on the senior debt and, by reason of the subordination agreement provisions requiring them to be turned over to the senior creditor, the dividends paid on the subordinated debt." Calligar, 70 Yale LJ at 376-77.

Although the above discussion sketches the landscape for our decision, this case turns on the interpretation of

the particular terms of the convertible subordinated debenture agreement that is the subject of this litigation. Here, default renders the entire debt "due and payable," and the holder may seek all legal and equitable remedies available upon the happening of an enumerated default event. In particular, default occurs when defendant "fails to pay any interest on th[e] Debenture when it is *due and payable*, and the failure continues for a period of thirty (30) days." (Emphasis added.) The parties do not dispute that defendant discontinued payment of interest on the debenture. As the terms of the default clause indicate, however, if the interest was not "due and payable," then defendant did not default on the loan. Thus, the default inquiry turns on the meaning of "due and payable" under the agreement.

■      In construing a contract, we apply the test set out in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). First, we examine the text of the disputed provision in the context of the document as a whole. *Id.* at 361. If the meaning of the provision is clear, we construe the terms as a matter of law. *Id.* (citing *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995)). Ambiguity exists, however, if the provision is capable of more than one sensible and reasonable interpretation. *Id.* at 363-64.

■      Here, "due and payable" is not specifically defined in the agreement. In ordinary usage, however, "due" means "owed or owing as a debt," and "payable" means "requiring to be paid." *Webster's Third New Int'l Dictionary*, 699, 1659 (unabridged ed 1993). *See also Black's Law Dictionary,* 345, 781 (abridged 6th ed 1991) (similarly defining "due" and noting that "payable," if not qualified, means "payable at once"). The phrase together, then, connotes an immediate obligation to pay an owed debt.[3] Standing alone, however, the phrase does not dictate what event precipitates the obligation to pay.

---

[3] That understanding is consistent with what courts have recognized as the settled commercial understanding of the phrase. *See, e.g., Racing Com. v. Multnomah Kennel Club*, 242 Or 572, 582-83, 411 P2d 63 (1966) (distinguishing "payable" from "due" and recognizing that "debt is not payable until the day arrives which has been agreed upon as the date for payment" and that "[m]oney may be owing, though not payable"); *Furrow v. Commissioner*, 292 F2d 604, 606-07 (10th Cir 1961) ("due" when coupled with the term "payable" means "immediately payable").

That inquiry requires consideration of other terms of the agreement. *See id.* at 345 (noting the significance of context in determining the meaning of "due"). Thus, we must look to the context—particularly the terms of repayment and the subordination clause—to determine if the agreement unambiguously describes if the interest became "due and payable" in this case.

On the one hand, the agreement requires defendant to make quarterly interest payments in January, April, July, and October of each year. On the other hand, the subordination clause limits plaintiff's right to "receive payment of *any* principal or interest" as "*subject and subordinate to the prior payment* of" principal and interest to the senior debt holders. (Emphasis added.) Thus, although the first provision requires regular quarterly interest payments, the second provision unambiguously qualifies that obligation and makes it subject to prior payment to the senior creditors.

Encountering a similar agreement, an Idaho court determined that a debtor's failure to pay interest on subordinated notes did not constitute default. *Culp v. Tri-County Tractor, Inc.*, 112 Idaho 894, 736 P2d 1348, 1350 (Id Ct App 1987). In *Culp*, the plaintiffs had entered into agreements subordinating their promissory notes to the defendant's bank loan. The subordination agreements required the parties to obtain consent from the bank prior to making any payments on the plaintiffs' notes. *Id.* When the defendant failed to make a scheduled interest payment, the plaintiffs declared a default and claimed all sums on the notes due. However, because the bank had not consented to the interest payment as required in the agreements, any payment by the defendant would have violated the subordination agreements. Thus, the court concluded that the defendant was not in default because "[f]ailure to perform a prohibited act cannot be treated as an event of default." *Id.* at 1351.

■    The debenture here dictates a similar result. The agreement provides that plaintiff's right to receive principal and interest payments is "subject and subordinate" to payment of the principal and interest owed to senior creditors. As did the plaintiffs in *Culp,* plaintiff here bargained for subordinated repayment rights, not just subordinated priority in

bankruptcy proceedings.[4] And, like the plaintiffs in *Culp*, plaintiff cannot declare a default and accelerate payments when the debtor is prevented from making an interest payment by the very terms of the subordination clause.[5] Indeed, under the terms of the agreement, plaintiff could not, without breaching the agreement, even *receive* payment on the debenture until the senior debt was paid. Said another way, payment may have been due, but it was not *payable*.

The thrust of plaintiff's argument is that the subordination clause only applies after an event of default, and, thus, it may pursue a judgment even if the subordination of its right to payment prevents it from enforcing the judgment. Plaintiff's position, however, ignores the first sentence of the subordination clause. That sentence supplements the default clause by specifying when the "right to receive" payment accrues, which consequently, defines the circumstances under which interest becomes "due and payable." The second sentence of the subordination clause, upon which plaintiff apparently relies, merely sets the priority of distribution when the corporate assets are divided. Accordingly, we reject plaintiff's interpretation because it would force us to construe the agreement in a manner that would render the first sentence meaningless. *See Oregon Bank v. Nautilus Crane & Equip. Corp.*, 68 Or App 131, 146, 683 P2d 95 (1984) (courts must avoid construing an agreement that would render any part of it meaningless); ORS 42.230 (courts may not insert

---

[4] In contrast, the Minnesota Court of Appeals rejected the *Culp* court's analysis and determined that the subordination agreement "merely modified lien priorities among the contracting parties." *North Star v. Graphics Unlimited,* 563 NW2d 73, 76 (Minn App 1997). The contract language in *North Star*, however, was significantly different from the language here. In *North Star*, the subordination agreement made "claims"—not payments—subordinate, and the promissory note broadly defined default as any failure to make the required payments. *Id.* at 74-75. The court's analysis in *North Star* is not persuasive in the context of the terms of the debenture agreement at issue here.

[5] Although such an agreement may seem harsh, that outcome is consistent with the terms of this contract and subordination agreements of this type. As one expert explains:

"[A]lthough the junior creditor will not be paid until the senior debt has been satisfied, the obligation of the debtor to pay the junior debt according to its tenor remains, but the junior creditor cannot enforce that obligation. The junior creditor cannot receive his payments because of his agreement with the senior creditor, and not because his debtor's obligation has been impaired."

Calligar, 70 Yale LJ at 382.

what has been omitted or omit what has been inserted; where there are several provisions, they must, if possible, be construed as to give effect to all).

In summary, the agreement unambiguously provides that the debenture could not be "due and payable" until the USNB debt was satisfied. Because the USNB debt had not been satisfied, the debentures were not "due and payable." Defendant therefore was not in default, plaintiff was not entitled to accelerate amounts owed, and defendant did not breach the contract by failing to pay the accelerated debt. Consequently, defendant is entitled to judgment as a matter of law. Because judgment for plaintiff must be reversed, it follows that the supplemental judgment awarding attorney fees must also be reversed.

Summary judgment and supplemental judgment for attorney fees reversed; remanded with instructions to enter summary judgment in favor of defendant.